THE STATE OF CONNECTICUT vs. MORRIS CEDERASKI.

First Judicial District, Hartford, January Term, 1908.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

It is competent for the General Assembly to establish municipalities and authorize them to exercise, within their respective territorial limits, certain governmental powers, including those necessary to the maintenance of local order and the protection of the property, health and morals of their inhabitants.

The State *v.* Cederaski.

Ordinances enacted under such authority must be "reasonable," that is, must tend in some degree to accomplish the object for which alone the authority was granted; they must not violate any controlling general statute on the same subject, nor any constitutional guaranty of the rights of person and property; and their provisions must not be so vague as to render them void for uncertainty.

The common council of the city of New Britain, which was authorized by charter to pass ordinances, among other things, for the licensing and regulation of peddlers and hawkers, declared that no person should vend or peddle any fruits, groceries, or other goods, wares or merchandise, on the public streets of the city, or solicit sales thereof from house to house, unless licensed by the common council or its committee; and that the fee for fruit and vegetable peddlers should be $2 per month or fraction thereof. Upon a prosecution for a violation of this ordinance it was *held:*—

1. That the trade of hawkers and peddlers was one which had long been recognized as calling for special legislative control and restriction, especially when carried on in the streets of a populous city.

2. That the power to license and regulate necessarily implied, if indeed it did not clearly express, the power to prescribe the amount of the license fee and to enforce its payment.

3. That an exaction of $2 a month, if it could be regarded as an exercise of the power of taxation at all, was only such as was incidental and subordinate to the main purpose of regulation, and, as such, was within the power conferred by the charter.

4. That the ordinance, being authorized and constitutional, the discretion exercised by the common council in prescribing the license fee could not be reviewed by this court.

The case of *State* v. *Glavin*, 67 Conn. 29, distinguished.

Argued January 14th—decided March 5th, 1908.

INFORMATION for hawking and peddling fruits and vegetables on the streets of New Britain without a city license, brought to the Superior Court in Hartford County where a demurrer to the complaint was overruled and the cause was tried to the jury before *George W. Wheeler, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*George W. Klett* and *Benjamin W. Alling,* for the appellant (the accused).

*John H. Buck,* Assistant State's Attorney, for the appellee (the State).

HAMERSLEY, J.  It is well settled that the legislature may lawfully establish a municipality authorized to exercise within its territorial limits certain governmental powers of the State.  The power thus authorized may include the powers necessary to the maintenance of a local government charged with the duty of preserving order within its limits, and of protecting the property, health, and morals of its inhabitants, and may include powers in the executive and legislative branches of the municipal government appropriate to the accomplishment of these ends.  When the local legislature, in strict pursuance of the authority given by statute, enacts ordinances, those ordinances are operative as laws by force of the statute, and the exercise of the authority thus given is subject to all the limitations placed upon the exercise of legislative power.  *State* v. *Carpenter*, 60 Conn. 97, 103, 22 Atl. 497.  Such ordinances must be reasonable, that is, they should tend in some degree to accomplish the object for which alone such legislative power is given ; they should not violate any provision of the fundamental law for protecting the rights of person and property ; and their provisions should not be so vague as to render them void for uncertainty.  See Cooley on Const. Lim. (3d Ed.) p. 200.

The phrase " by-laws must be reasonable " was first used in early English cases dealing with corporations aggregate erected by the King in the exercise of his prerogative. Such corporations included those which were purely private, as well as those of a quasi-public nature, such as chartered boroughs, and in the matter of by-laws there was no distinction between the two.  The courts held that the mere erection of a corporation aggregate involved the power to pass by-laws and impose penalties for their violation, and that by-laws passed in pursuance of such implied authority must be reasonable, that is, related to the purposes of the corporation and not contrary to the laws of the land, including the common law.  1 Black. Comm., Chap. xviii.  The phrase is still used when speaking of the validity of by-laws passed by any corporation aggregate,

but it is manifest that its meaning may be open to some misconception when used in reference to the validity of a law passed by a local government in pursuance of authority expressly given in the Act of Parliament by which such government is established, and especially when used in reference to the validity of laws passed by a municipality established for the purpose of local self-government by an Act of a State legislature under the provisions of its Constitution. In the latter case the validity of a city ordinance depends, first, upon the construction of the Act establishing the city government. Is the ordinance in question expressly, or by necessary implication, authorized by that Act? If not, the ordinance is unauthorized and therefore void; but if the ordinance is clearly authorized by the public Act, then it is an exercise of the legislative power of the State; and it is valid; and "reasonable" within the meaning of the ancient phrase, if its provisions do not violate any controlling general statute on the same subject and are within the limitations imposed by the fundamental law upon the exercise of legislative power.

The legislature has established the electors of the State residing within the territorial limits of the city of New Britain as a municipality for the purpose of local self-government, with the governmental powers conferred by its charter. 14 Special Laws, p. 915. These powers include: the power of taxation to defray the burdens and expenses imposed upon the city, both directly, through a tax laid by the city upon its grand list in the mode prescribed by its ordinances, and indirectly, through special assessments for public improvements and care of its streets, and through burdens imposed upon owners of property and others incident to the enforcement of regulations necessary for the protection of its inhabitants; the power to make such ordinances as it shall see fit concerning nuisances of all kind, and their summary abatement; concerning the preservation of the city from fires, and the erection of buildings that may become unsafe; concerning the regulation of markets and commerce, the inspection of produce brought into the

city for sale, and the sale of unwholesome food of any kind ; concerning the streets and public grounds and keeping the same free from snow, ice, rubbish, or obstructions of any kind ; concerning the licensing and regulation of public hacks and the charges of hackmen ; concerning the preservation of public peace and order ; the licensing of public sports ; the licensing and regulation of peddlers and hawkers ; the peddling and dealing in junk or second-hand articles ; and the prevention of vice, immorality, or disorder. The common council is authorized to prescribe penalties for the violation of any ordinances passed by it in pursuance of the charter, and the violation of any ordinance imposing a fine is made a misdemeanor which may be prosecuted before the city police court, like other offenses, provided no penalty or fine shall exceed the sum of $50 for a single offense.

The common council of New Britain passed the following ordinance : " Section 363. Licenses. No person except those exempted by the statutes of the State shall vend upon the public streets of said city, any groceries, provisions, fruits, goods, wares or other merchandise at any private or public sale or auction, or shall peddle or solicit sales of such articles of merchandise from house to house within said city, unless such person shall have a license from the Common Council or the License Committee thereof, and the following sums of money shall hereafter be paid as such license fees by all persons receiving licenses from the Common Council or the License Committee thereof :

" For vegetable and fruit peddlars, $2 per month or fraction thereof, . . . provided that this section shall not extend to sales, by farmers or gardeners, of the products of their farms and gardens and to fish venders. Such peddlars and street venders, either with or without teams shall be licensed to do business only between the hours of seven o'clock A. M., and four o'clock P. M. Each peddlar or vender shall procure a badge, with a number plainly engraved or fastened thereon, from the Chief of Police, for which he shall deposit with said Chief of Police the sum of $2 as security

therefor, and shall wear such badge in a conspicuous place.

"Any person offending against any provision in this section shall pay a fine of $10 for each offense."

The defendant, while peddling in the streets of New Britain without having a license therefor, was arrested and convicted of a violation of this ordinance. He appeals from the judgment of conviction, on the sole ground that the trial court erred in not holding that the ordinance was invalid, when that question was raised by a demurrer to the complaint and by the defendant's request to charge. The reasons of appeal do not state, nor does the argument of counsel urge, any ground upon which the claim of invalidity can be sustained. The ordinance was passed in strict pursuance of authority given by the charter. The power to provide for the licensing and regulation of peddlers and hawkers necessarily implies, if it does not clearly express, the power of prescribing the amount of the license fee and of enforcing its payment. It is sufficient if the power exercised is conferred by necessary implication. *Pratt* v. *Litchfield*, 62 Conn. 112, 118, 25 Atl. 461. A license fee prescribed and enforced by government will be treated as an exercise of the power of regulation rather than of taxation, when that purpose is clearly indicated by the real legal effect of the Act. The court looks at the essence as well as the form. *State* v. *Conlon*, 65 Conn. 478, 484, 33 Atl. 519. Such a trade regulation, which indirectly taxes the business regulated, to the amount of the license fee, is valid; and a regulation of the trade of "hawkers and peddlers," through the imposition of a license fee, is valid, whether the indirect taxation is small or large, so long as its provisions are within the limitations of legislative power. *State* v. *Feingold*, 77 Conn. 326, 333, 59 Atl. 211. A regulation like the one under discussion is not so clearly inappropriate and unrelated to the protection sought to be given that it must be treated as a mere arbitrary and unwarranted restriction on trade.

The above rules apply, whether the terms of the trade

regulation are fixed directly by the State legislature, or indirectly through its agent, the local legislature, acting within the authority given it in express terms or by necessary implication. But when the question arises in respect to a city ordinance, the amount of the license fee may become significant in determining the true construction of the authorizing statute. Does the statute authorize regulation for the mere purpose of obtaining the information furnished by a registration of all persons engaged in a particular trade, or does it authorize regulation for the purpose of restricting and controlling the exercise of a trade in particulars wherein that trade is specially liable to endanger or injure the public? In the former case the imposition of a license fee so large as to be clearly in excess of the possible cost of the issue and registration of the licenses might be held to be in excess of the authority conferred by the statute, and the cases dealing with tests that define the limits of the discretion given to the local legislature by such authority would be in point; in the latter case, however, the discretion of the local legislature in prescribing the amount of the fee relates, in addition to the mere cost of registration, to other expenses imposed upon the city in exercising the regulation authorized, and also to the necessity of some restriction as to the persons engaging in the trade.

The trade of hawkers and peddlers is one which from earliest times has been recognized as calling for special legislative control and restriction. This is emphatically true when the streets of a populous city are used for the prosecution of the trade. We are satisfied that the charter of New Britain clearly authorizes the city council to enact ordinances regulating the trade of hawkers and peddlers, for the purpose of protecting its citizens from the special dangers involved in the prosecution of that trade within the city limits, and for the same purpose to prescribe and enforce the payment of a license fee. The provisions of the ordinance in question, in so far as they prescribe a license fee of $2 a month, are plainly pursuant to this

authority.   If the element of taxation involved in exacting the license fee prescribed can be regarded as an exercise of the power of taxation, it is not an exercise of that power as distinguished from the power of regulation authorized, and the power of such incidental taxation is conferred by the charter.   The question now before us was not considered in *State* v. *Glavin*, 67 Conn. 29, 34 Atl. 708.   In that case the ordinance in question was held void for uncertainty ;  and we added that even if the common council could by ordinance validly authorize city officials to prescribe the amount of the license fee, that such authority must be limited by the reasonable cost of the license, and that the fee prescribed was so large that under the name and form of a license fee it was in reality an irregular assessment of taxes for revenue, which was unwarranted by the charter.   The view that we have expressed is supported by decisions in other jurisdictions, especially in cases dealing with a public Act establishing a local government authorized to exercise the police powers which are authorized by the New Britain charter.

The ordinance in question being authorized by the charter, and not being obnoxious to constitutional provisions for any of the reasons assigned, the discretion exercised by the local legislature in prescribing the license fee cannot be reviewed by the court.   Whether or not the power of regulation authorized by the charter should be restricted to a mere registration, is a question for the State legislature and is not a judicial question.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred