THE CITY OF NEW LONDON *vs.* THOMAS HOWE.

Second Judicial District, Norwich, October Term, 1919.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

The essence and legal effect of a city ordinance, rather than its form and phraseology, is of controlling importance in determining whether it is in reality a regulation of the particular business authorized by the charter, or is an unwarranted exercise by the city of the power of taxation for the purpose of revenue. If the payments required are large and disproportionate to the expense incident to or involved in the mere licensing and direction of the business, there is ordinarily no escape from the conclusion that revenue and not regulation is the object aimed at by the ordinance.

An ordinance of the City of New London, enacted under legislative authority to regulate sales by auction, provided for the licensing of suitable persons as auctioneers upon the payment of $25 and the execution of a $500 bond conditioned for the faithful performance of all the terms of the ordinance. Section 4 required each auctioneer to keep an accurate account of all sales, the name of the vendor, the place, date, and amount of sale, and to file a true copy thereof monthly with the city treasurer, to whom he was to account for all moneys due upon such sales, and (§ 5) to pay to the city one quarter of one per cent on the gross amount of all sales of real estate and two per cent on all sales of personal property. Section 6 prohibited licensed auctioneers from receiving secret bids or committing fraud of any kind, and § 7 forbade, and prescribed punishment for, sales by unlicensed persons. In an action to recover the prescribed percentages, which amounted to $5,200, the complaint included a count for a breach of the bond. *Held:*—

1. That so much of the ordinance as required the payment to the city of percentages on auction sales, was obviously intended for revenue purposes, and was void because in excess of the authority conferred upon the city by its charter.

2. That the provisions of § 4 requiring accurate accounts to be kept and returns made by licensed auctioneers, was merely ancillary to the enforcement of the collection of the percentages prescribed in section five.

3. That inasmuch as the alleged breaches of the bond were confined to those arising out of noncompliance with the revenue-features of the ordinance, they must share the same fate of illegality, and therefore no recovery could be had under that count of the complaint.

Argued October 22d, 1919—decided January 8th, 1920.

New London *v.* Howe.

ACTION to recover moneys alleged to be due the plaintiff under an ordinance of the city of New London relative to auctioneers and requiring payment by the defendant, a licensed auctioneer, of a percentage on the gross amount of his sales, brought to and reserved by the Superior Court in New London County, *Webb, J.,* upon a demurrer to the complaint, for the advice of this court. *Judgment sustaining demurrer advised.*

The complaint states the following facts: The defendant was an auctioneer licensed under an ordinance of the plaintiff City, made a part of the complaint. As a condition precedent to the issuing of a license to him, he had executed and delivered to the City a bond such as the ordinance prescribed. In that month he sold at public auction within the city personal property belonging to an employer to the amount of $250,000, and real estate belonging to the same person to the amount of $80,000. He never filed with the city treasury a report of such sale, and has never paid the sum of $5,200, or any part thereof, which the City claims to be due it under the ordinance by reason of the sale.

The ordinance, omitting its formal portions, appears in the foot-note.

"Section 1. Suitable persons may be licensed by the court of common council as auctioneers to sell property at public auction within said city.

"Section 2. Such license shall continue for the term of one year from the date thereof, unless forfeited for a violation of the provisions of this ordinance.

"Section 3. Every person so licensed shall pay to the treasurer of the city of New London, for the use of said city, before he shall receive a certificate of license, the sum of twenty-five dollars, and shall also execute a bond to the city, with two sureties satisfactory to the mayor, in the sum of five hundred dollars for the faithful performance of all the provisions of this ordinance.

"Section 4. Every such auctioneer shall keep an accurate account of all sales of property made by him including the nature of the property, the name of the owner, the place, date and amount of sale, and shall file

New London *v.* Howe.

Other facts are sufficiently stated in the opinion.

*Christopher L. Avery,* with whom was *Charles B. Waller,* for the defendant.

*Philip Z. Hankey* and *Morris Lubchansky,* for the plaintiff.

PRENTICE, C. J. The complaint contains two counts, the first upon a city ordinance, and the second upon a bond given by the defendant to the City in compliance with the ordinance. The first seeks to recover the sum of $5,200 claimed to be due as an auctioneer's fee computed in accordance with the terms of the ordinance, and the second for damages resulting from a breach or breaches of the bond's conditions. The demurrer runs to the complaint as an entirety. The stipulation filed by the counsel, however, agrees that it may be regarded as a demurrer to each count separately.

with the city treasurer, on the first Monday of each month, a true copy thereof in writing, signed and sworn to by him, and shall faithfully account to said treasurer monthly for all moneys due said city upon said sales.

"Section 5. There shall be due from and payable to said city, by such auctioneers, the sum of one-quarter of one per cent on the gross amount of all sales of real estate and vessels, and two per cent on the gross amount of all sales of other property sold by them at public auction, and they shall be accountable to said city therefor.

"Section 6. Every auctioneer who shall refuse or neglect to comply with any of the provisions of this ordinance, or who shall receive secret bids from the owner or agents of property being sold, or falsely pretend to have received any bid, or knowingly receive a bid from, or dispose of, or sell the property to any person not a bona fide bidder, or who shall be guilty of any other fraud or deception at any auction sale shall forfeit his license and shall not again be licensed as an auctioneer.

"Section 7. Every person, not being licensed and qualified according to the provisions of this ordinance, or by other lawful authority, and not having a certificate, who shall sell at public auction any property in this city, shall be guilty of a misdemeanor, and shall pay a fine of not less than five nor more than thirty dollars, to the treasury of said city."

Counsel appear to be in accord in their views to the extent of agreeing, on the one hand, that the General Assembly has in the City's charter granted to it authority to regulate sales by auction within its limits, and, as incidental to such regulation, to license auctioneers and require of them reasonable license fees; and on the other hand, that the City has no right to utilize its authority to license and collect license fees, as a revenue-producing measure, and is not otherwise empowered to resort to such means of obtaining a revenue. The question presented by the demurrer as addressed to the first count thus becomes resolved into one as to whether or no the sales' percentage payments, which the ordinance requires to be made, either purport upon the face of the ordinance to be made as license fees, or, if they do so purport, whether they in reality partake of the character of true regulatory license fees, or of something quite different.

In answering the first phase of this two-faced question, it is significant to notice that nowhere in the ordinance are these payments referred to as being license fees. Section 3 prescribes a payment of $25 as one of the conditions precedent to the issuance of a license certificate. The other condition is the giving of a bond. By the payment of such fee and the filing of such bond, the applicant becomes entitled to receive a certificate, and having received it, to act as auctioneer. The next two sections prescribe the duties of persons so licensed. They are to keep accounts of their sales, with a description of the property sold, name of the owner, place and date of sale, and amount received, render monthly a sworn detailed report thereof to the city treasurer, and pay to the latter a certain defined percentage of the gross sales thus shown. Nothing is said in these sections, or elsewhere in the ordinance, to suggest that the payments were required as supplemental to the $25 fee

paid to secure the license certificate or as being part of the fee. For aught that the ordinance expresses or its language indicates, the assumption that they were exacted as a convenient method of raising revenue is quite as well founded as any other. The exigencies of the present case demand that the City treat these provisions of the ordinance as made in the exercise of the police power of regulation, and not in the exercise of the taxing power, and that appears to be the only reason for so regarding them.

If, however, the language of the ordinance is to be construed as the City would have us construe it, the alternative phase of the question presents itself for consideration, to wit, are the prescribed sales' percentage payments in reality true regulatory license fees, or something quite different masquerading in that guise. In answering this question regard must be had to the legal effect of the ordinance rather than to its phraseology, to its essence as well as its form. *State* v. *Conlon,* 65 Conn. 478, 484, 33 Atl. 519; *State* v. *Cederaski,* 80 Conn. 478, 483, 69 Atl. 19.

The test to be applied in determining whether or not a fee prescribed under the name or guise of a license fee is one in fact, has been under consideration by us in several cases. *Welch* v. *Hotchkiss,* 39 Conn. 140, 142; *New Haven* v. *New Haven Water Co.,* 44 Conn. 105, 108; *State* v. *Glavin,* 67 Conn. 29, 34, 34 Atl. 708; *State* v. *Cederaski,* 80 Conn. 478, 484, 69 Atl. 19. Giving to the most comprehensive language used in any of these cases the most liberal construction and to the test prescribed the widest latitude of which it is capable, it still appears that the payments imposed by this ordinance are so large and so out of proportion to any lawful purpose to which they could be applied in the exercise of the power of regulation, that there is no escape from the conclusion that the object of that part of the ordinance

under review was not regulation in the exercise of the police power, but production of revenue in the exercise of the power of taxation. The fact that it was capable of yielding in a case like the present the sum of $5,200 for a single sale, and in cases of presumably not infrequent occurrence would call for the payment of very substantial sums, furnishes convincing proof that something more than a mere regulation of the business and payment of the expenses incident thereto or involved therein was aimed at.

The bond, for the breach of which the second count seeks recovery, is conditioned upon a faithful performance by the defendant, its principal, of all of the provisions of the ordinance under which he received his license to act as an auctioneer. The ordinance embodies several provisions in addition to the one prescribing the original license fee of $25 and the subsequent sales' percentage payments. Some of these additional provisions are altogether unrelated to the matter of payments, and clearly are separable from those that are so related. Section 6 contains such provisions which relate to and regulate the licensed auctioneer's conduct. It is apparent, therefore, that the ordinance's requirement that the sales' percentage payments be made, would not invalidate the whole ordinance. Its portions, wholly separable from that subject, would remain effective, and the obligors on the bond given for the faithful performance of the ordinance would remain liable for its faithful performance in all its valid parts.

In the present complaint there is no allegation of the breach of the bond arising out of noncompliance with the clearly separable provisions contained in § 6 or elsewhere. The only allegation of breach is, to quote the language of the complaint, that the defendant "has never filed with the city treasurer a true copy, signed and sworn to by him, of an account of said sales or of

the name of the owner, the place, date or amount of said sales, nor has he accounted to or paid to said city the moneys due said city upon said sales, under the provisions of said ordinance and the terms of said bond." It, therefore, becomes pertinent to inquire whether or not the provisions of § 4, which prescribe that each auctioneer shall keep an account of his sales, the name of the owner of the property sold, the place, date and amount of sale, and on the first Monday of each month file a true and sworn copy of the same with the city treasurer, have any other purpose than as incidental to the sales' percentage payments, and as supplying aids in the enforcement of the collection of those payments which the auctioneer is called upon to make simultaneously with the filing of his monthly reports.

It is, perhaps, supposable that the City might, for the purposes of regulating the conduct of the business carried on by auctioneers, desire the information which would be supplied by such returns as those prescribed. It is, however, difficult to conceive of such a purpose in connection with anything which the plaintiff City has undertaken to do. But whether so or not, the language of the ordinance and its provisions indicate too plainly to be mistaken that the City, in its adoption, had no other end in view to be achieved by § 4 than the enforcement of the collection of the sales' percentage payments defined in the following section. The provisions for the accounts, reports and payments are closely tied up to each other and together comprise the whole of the section which apparently has only a single object. When condensed, they amount to this: that the auctioneer shall keep accurate accounts, report them to the city collecting officer and, coincident with such report, pay to him the amount shown to be due thereon. The information machinery set up in the ordinance and the information sought to be supplied thereby, if regarded

as separated from the payment requirements, would seem to be altogether useless to the City and, as far as it appears, not adapted to any end it has in view. We are, therefore, unable to discover how the provisions in question can reasonably be regarded as requirements of the ordinance separable from and unconnected with the illegal attempt to exact the percentage payments and thus saved from being carried down in its downfall.

The Superior Court is advised to render its judgment sustaining the demurrer to the complaint.

Costs in this court will be taxed in favor of the defendant.

In this opinion the other judges concurred.