THE STATE OF CONNECTICUT EX REL. ERNST C. ADAMS *vs.* HENRY P. CRAWFORD ET ALS., COUNTY COMMISSIONERS.

Third Judicial District, New Haven, June Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

The sale of intoxicating liquors in this State on and after July 1st, 1919, being unlawful by virtue of the so-called War-time Prohibition Act of Congress approved November 21st, 1918, the General Assembly at its January Session in 1919 provided in substance (Public Acts of 1919, Chap. 164) that upon the surrender of his liquor license by any licensee, the county commissioners should refund to him a part of the fee or tax paid by him, proportioned to the unexpired portion of the license year. *Held:*—

1. That the Act was not objectionable as an attempt to vote a gratuity or to divert public funds to a purely private use; but, on the contrary, was merely the remission of a tax in the valid exercise of powers incidental to the power of taxation, and therefore was well within the constitutional authority of the General Assembly.

2. That the Act did not, as contended, deprive the counties and towns of vested property-rights, since they could not acquire, in the liquor-license fees alloted to them by the public statute (§ 2743), any property-right inconsistent with the exercise by the legislature of its unquestionable power to remit taxes, and its power to control subordinate agencies of government.

3. That upon the refusal of the county commissioners to comply with the Act, *mandamus* was an appropriate remedy, the duty to refund being clear and absolute and the amount of the claim being undisputed; and that the remedy at law was not adequate, since a judgment could not be collected by execution but only by *mandamus* or by an action on the commissioners' bonds, thus compelling circuity of action.

4. That a plea in abatement alleging the nonjoinder of several hundred other licensees who had such an interest in the subject-matter of the litigation as to be indispensable parties,—was properly overruled on demurrer: first, because it failed to allege that any of such other licensees had surrendered their licenses and thus qualified themselves to ask for reimbursement; and second—even if such allegation had been made—because each licensee had a separate interest the differing merits of which must be separately tried.

A license fee imposed solely or principally for raising revenue is a tax, no matter by what name it is called.

There is no principle of constitutional law which requires a State to retain a fee paid for the privilege of conducting a business which has since become unlawful, or which forbids the General Assembly to recognize its moral obligation to refund a part of such fee.

The defendants urged that the Act in question was invalid as an exercise of the judicial, as distinguished from the legislative, power. *Held* that there was no merit in such contention.

Argued June 6th—decided July 27th, 1923.

APPLICATION for a writ of *mandamus* requiring the County Commissioners of Fairfield County to refund to the relator a proportionate part of the liquor-license fee paid by him, as provided by Chapter 164 of the Public Acts of 1919, brought to and tried by the Court of Common Pleas in Fairfield County, *Booth, J.;* judgment for the relator, requiring the payment to him of $312.50, from which the respondents appealed. *No error.*

The material facts alleged in the alternative writ are as follows: On November 21st, 1918, the President of the United States approved an Act of Congress, known as the War-time Prohibition Act, providing that after June 30th, 1919, until the termination of the war and thereafter until the termination of the period

of demobilization, the date to be determined and proclaimed by the President, no beer, wine or other intoxicating liquor should be sold for beverage purposes except for export.

On December 1st, 1918, upon the application of the relator, the county commissioners issued to him a liquor license authorizing him to sell intoxicating liquors at retail, at a designated place in the city of Bridgeport for a period of one year from the issuing of the license, and the relator paid therefor the sum of $750.

At its January Session, 1919, the General Assembly passed an Act, approved May 1st, 1919, entitled "An Act Reimbursing Holders of Liquor Licenses for Moneys paid as Fees for Licenses," which provided in § 2 thereof: "Upon the surrender of his license by any licensee or by the holder of a club certificate, upon the determination by the Attorney-General that the sale or dispensing of liquor by authority of such license or club certificate has become unlawful, the commissioners shall reimburse such licensee or holder in an amount bearing such proportion to the total license fee paid as the unexpired portion of the license year bears to the total period for which such license was granted."

On July 1st, 1919, the sale of liquor became unlawful, and the relator on that day surrendered his license to the county commissioners. The Attorney-General has determined that the sale and dispensing of liquor by authority of the relator's license has become unlawful.

The county commissioners have failed and refused to reimburse the relator as directed by § 2 of Chapter 164 of the Public Acts of 1919.

The county commissioners plead in abatement to the alternative writ, for nonjoinder of seven hundred

and thirteen other licensees in the county of Fairfield who were alleged in the plea to have such an interest in the writ as to be indispensable parties. After a demurrer to the plea had been sustained, the respondents answered, substantially admitting the allegations of fact in the alternative writ; asking that all other licensees in Fairfield county be joined as corelators, and that the cities and towns in the county be joined as respondents, and alleging that the statute in question is unconstitutional in that it attempts to misappropriate public funds for a purely private use.

The trial court found the issues for the relator and directed that the peremptory writ issue.

*Jacob B. Klein* and *John J. Cuneo,* with whom was *Maurice E. Resnick,* for the appellants (respondents).

*Robert R. Rosan,* for the appellee (relator).

BEACH, J. Three reasons of appeal are pursued: that the court erred in sustaining the demurrer to the plea in abatement; that it erred in ruling that *mandamus* was the proper remedy for the wrong complained of; and that it erred in holding that the statute was valid.

The demurrer to the plea in abatement was properly sustained. The plea does not allege that any or all of the seven hundred and thirteen other licensees had surrendered their licenses to the county commissioners before this proceeding was instituted; yet by § 2 of the Act the surrender of the license is made a condition precedent to the right to reimbursement. Hence the plea does not show that any of the other licensees had qualified themselves to ask for reimbursement.

But supposing the plea had alleged that all of them had surrendered their licenses, the fact would still

remain that the right pursued is purely statutory, and that § 2 requires the commissioners to reimburse each licensee separately. It provides that "upon the surrender of his license" the commissioners "shall reimburse such licensee," etc.; and in each instance the obligation to reimburse accrues upon the surrender of the license, and is proportionate in amount to "the unexpired portion of the license year"—meaning very plainly that portion of the license year unexpired at the date of the surrender of the license.

Moreover, the statute necessarily assumes that the license has not already been forfeited or become forfeit in the hands of the licensee before the surrender. In short, it would still be necessary to examine every case separately on its merits, if all the licensees in the county were joined. Since the statute gives each licensee a separate interest, and the right to pursue it separately, the authorities cited by the respondents have no application.

The court did not err in issuing the writ. The statute is mandatory. It leaves nothing to the discretion of the commissioners. The application for the writ alleges facts upon which it became the statutory duty of the commissioners to pay the relator a fixed sum, and alleges that they refused to pay it. *State ex rel. Bulkeley* v. *Williams*, 68 Conn. 131, 35 Atl. 24, 421, is exactly in point.

It is said that the relator has an adequate remedy at law, because he might obtain a judgment against the commissioners in an action at law. But the remedy at law is inadequate because ineffectual and incomplete. The judgment could not be collected by levy of execution, and could be collected only by *mandamus*, or by an action on the commissioners' bonds. To avoid circuity of action and because the State is interested in compelling its agents to obey its com-

mands, it is well settled that *mandamus* will lie to compel the payment of money by public officials when the duty to pay it is plain and the claim is just, undisputed in amount, and based on a clear legal right. *State ex rel. Bulkeley* v. *Williams, supra.* For cases applying this rule to a refund of taxes paid, see *Henderson* v. *State*, 53 Ind. 60; *Eyerly* v. *Jasper County*, 72 Iowa, 149, 33 N. W. 609; *People ex rel. Pells* v. *Supervisors of Ulster County*, 65 N. Y. 300.

The objections to the validity of the statute are confined on the brief to three propositions: that the statute attempts to divert public funds to a purely private use, that it takes from the counties and towns vested rights of property, and that it is an exercise of the judicial as distinguished from the legislative powers of the State.

The first of these propositions is based on *Beach* v. *Bradstreet*, 85 Conn. 344, 82 Atl. 1030, and it assumes that the statute commands the county commissioners to pay a gratuity out of public funds. That assumption is incorrect, for it is apparent not only from the language of the Act, but from the circumstances surrounding the passage of the Act, that it is not in the nature of a vote of a gratuity, but in the nature of a remission of a tax; and the power of the General Assembly to remit taxes within constitutional limits being unquestionable, the real issue is whether this particular remission is a valid exercise of powers incidental to the taxing power.

There are many cases in which courts have referred the imposition of license fees to the police power rather than the taxing power. Our own rule on the subject has been thus stated: "Where the license fee is imposed solely or primarily for raising revenue, it is the imposition of a tax no matter by what name it may be called." *State* v. *Murphy*, 90 Conn. 662, 665, 98 Atl.

343. See, also, *New London* v. *Howe*, 94 Conn. 269, 108 Atl. 529.

Since we are dealing in this case with a statute passed by a legislature which possesses not only the broad power of taxation unrestricted by specific constitutional limitations, but also the police power not specifically restricted save by the Bill of Rights, we need not pursue the distinction between a license fee and a tax any further than to observe that while the regulation of the liquor traffic falls within the police power, the provisions of § 2743 for the distribution of the proceeds of liquor-license fees among the State, the county, and the license towns in the county, show very plainly that the imposition of these particular license fees was in part for revenue and involved an exercise of the taxing power. Nevertheless, the tax was not a general levy upon property, persons, or incomes, but an excise tax upon the privilege of conducting, for a definite term, a business dangerous to the public welfare in which only a few selected persons were permitted to engage upon payment of a very substantial license fee.

The underlying question is whether the General Assembly, in the absence of specific constitutional limitations on its taxing power, might lawfully, by a statute applying generally to all licensees, remit a proportionate fraction of such a tax upon the surrender of the privilege before the expiration of the license. We see no fundamental constitutional objection to such a remission.

It can hardly be doubted that the General Assembly might have provided in the licensing Act itself for a proportionate rebate of the fee paid, upon the surrender of the license before its expiration. The New York liquor-license law contained such a provision and its validity was never questioned, though the

provision for rebates came under the scrutiny of the Court of Appeals in *People ex rel. Miller* v. *Lyman,* 156 N. Y. 407, 50 N. E. 1112. In *Hirn* v. *State,* 1 Ohio St. 15, a licensed tavern-keeper was indicted for continuing to sell liquor after the licensing Act had been repealed, and before the term of his license had expired. The theory of the prosecution was that the repeal of the licensing Act operated by implication as a revocation of all licenses outstanding at the date of its repeal, and the court said in sustaining a demurrer to the indictment: "It is not reasonable to presume that the legislature would, after authorizing a license, and allowing the granting of it till a particular period, and after obtaining thereby the payment of many thousands of dollars into the treasury, revoke the license before the expiration of the term for which it was granted, without reimbursement." These cases are not in point, but they are significant because they show that the reimbursement· of holders of liquor licenses which have become ineffectual, by surrender or revocation without fault, has been approved by two eminent courts of last resort.

Equitable considerations are not conclusive upon sovereign States, but the fundamental principles of the law, including constitutional law, follow substantially the recognized course of fair dealing. It is true that these liquor licenses did not become ineffectual by any prohibition directly emanating from the General Assembly. Nevertheless, the State had, by its allegiance to the Federal Constitution, assented in advance to the passage of the War-time Prohibition Act, which by that assent became the law of Connecticut. It is also true that the General Assembly was not bound to refund any part of these license fees. But that argument does not support the burden which the respondents have assumed by challenging the

constitutionality of the Act. They must go further and point to some fundamental principle of constitutional law which requires the State to retain license fees paid for the privilege of carrying on a business which has become unlawful. They have not done so. Because the licensees had no remedy at the common law, it does not follow that the General Assembly might not recognize its moral obligation as the keeper of the State's conscience, and give them a remedy. We are of opinion that the Act is a constitutional exercise of the power to remit taxes. This conclusion disposes also of the objection that the statute was an exercise of the judicial, as distinguished from the legislative, power.

The contention that the Act deprives the counties and towns of vested property rights was, in principle, answered by the Supreme Court of the United States in *East Hartford* v. *Hartford Bridge Co.*, 51 U. S. (10 How.) 511, 534. In that case the supposed contract, claimed to have been impaired, related to certain rights in a ferry alleged to have been granted to Hartford and half of it transferred to East Harftord. Subsequently the Hartford Bridge Company was incorporated with power to build a bridge across the river, and the General Assembly passed an Act providing in substance that the ferries should be discontinued and the towns should not thereafter operate them while the bridge was in repair.

The Supreme Court based its conclusion that no contract obligation was impaired, on the broad ground that "the doings of the legislature as to this ferry must be considered rather as public laws than as contracts. They related to public interests. They changed as those interests demanded. The grantees likewise, the towns being mere organizations for public purposes, were liable to have their public powers,

rights, and duties modified or abolished at any moment by the legislature. They are incorporated for public, and not private objects. They are allowed to hold privileges or property only for public purposes. The members are not shareholders, nor joint partners in any corporate estate, which they can sell or devise to others, or which can be attached and levied on for their debts. Hence, generally, the doings between them and the legislature are in the nature of legislation rather than compact, and subject to all the legislative conditions just named, and therefore to be considered as not violated by subsequent legislative changes. It is hardly possible to conceive the grounds on which a different result could be vindicated, without destroying all legislative sovereignty, and checking most legislative improvements and amendments, as well as supervision over its subordinate public bodies."

This reasoning seems conclusive. Section 2743, under which the counties and towns received their distributive shares of liquor-license fees, is a public statute and not a contract, and they cannot acquire in public funds allotted to them by public statute, any property right which is inconsistent with the exercise by the legislature of its power to remit taxes and its power to control subordinate agencies of government.

There is no error.

In this opinion the other judges concurred.