## THE STATE *vs.* PAULINA FEINGOLD.

Third Judicial District, New Haven, June Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

Where the provisions of an Act are novel, its inducing purpose somewhat obscure, and its language not free from doubt, the Act should receive, if permissible, such a construction as will render it constitutional.

The Act concerning "Itinerant Vendors" (General Statutes, §§ 4662–4668) provides that all persons who engage in a temporary or transient business in this State, either in one locality or in traveling from place to place, selling merchandise, and for the purposes of carrying on such business hire, lease, or occupy any building or structure for the exhibition and sale of such merchandise, shall be deemed itinerant vendors; that every such vendor, before doing business in this State, shall deposit $500 with its treasurer, which shall be subject in his hands to attachment and execution by creditors of the itinerant vendor whose claims arise in connection with the business done by him in this State; that thereafter, and upon payment of $100 to said treasurer, he shall issue to said itinerant vendor a license to do business in this State for one year, which, however, must be supplemented by a town, city, or borough license, costing $25, before sales can lawfully be made. Upon a prosecution for a violation of the statute it was *held :—*

1. That the Act did not prohibit a single or isolated transaction of the character therein described, but only a distinct and continuous occupation, involving a. constantly recurring succession of such transactions, carried on by a trader who moves about from place to place.

2. That in licensing such a class of tramp traders, it could not be said that the legislature had not the power to require some guaranty that the applicant would not use the possibilities that might be peculiar to such an occupation for purposes of fraud or imposition; nor could the court affirm *a priori*, or from any facts brought to its judicial knowledge, that there were no opportunities for fraud or imposition peculiar to such an occupation that might lawfully call for some such guaranty.

State *v.* Feingold.

3. That the clause of the Act which required a deposit of $500 with the State treasurer before any license could issue, was not so entirely foreign to the protection which the statute aimed to afford that it could be said to be a mere arbitrary restriction on harmless trade and therefore unconstitutional; while the wisdom and sufficiency of such requirement was a question for the legislature rather than the court.

Argued June 21st—decided December 9th, 1904.

PROSECUTION for selling merchandise in violation of the statute concerning itinerant vendors, brought to the City Court of New Haven and thence, by appeal of the accused, to the Criminal Court of Common Pleas in New Haven County and reserved by that court, *Hubbard, J.,* upon a demurrer* to the complaint, for the advice of this court. *Judgment advised for the State.*

*William B. Stoddard* and *Jacob P. Goodhart,* for the accused.

*Robert J. Woodruff,* Prosecuting Attorney, *Richard H. Tyner* and *James E. Cooper,* for the State.

HAMERSLEY, J. In 1897 the legislature passed an Act entitled " An Act concerning Itinerant Vendors." Public Acts of 1897, p. 855, Chap. 152. This Act, with subsequent alterations and additions, is incorporated in the General Statutes under the heading "Itinerant Vendors," §§ 4662 to 4668. Section 4663 provides that every itinerant vendor who shall sell or expose for sale, at public or private sale, any goods without State and local licenses therefor, issued as hereinafter provided, shall be punished by fine and imprisonment.

The defendant in the present case is charged with the

---

* During the opening argument the court called the attention of counsel to the fact that no final judgment had been rendered below, and that a decision of the questions raised by the demurrer might not end the cause. Counsel upon each side stated that it was mutually understood that any judgment rendered by this court should be final, and, upon their undertaking to file a written stipulation to that effect, the argument was allowed to proceed.

State *v.* Feingold.

violation of this section, and claims that the Act requiring a license, in the restrictions which it imposes upon a lawful and harmless business, exceeds the limits of legislative power. The validity of the Act is the only question involved in this case. The legislature may in its discretion direct that a public register be kept of the persons engaged in any specified business, and for this purpose may require the persons so engaged to take out a license, and may indirectly tax such business through the amount fixed as a license fee. *State* v. *Conlon,* 65 Conn. 478, 483. In that case we held that the law then under discussion was void, because the arbitrary and unrestrained discretion as given by the law to municipal officers, to grant or refuse the license at pleasure, was obnoxious to § 1 of the first article of the Constitution of this State. The Act of 1897 requires the licensing authority to issue a license to whoever applies for the same and pays the license fee, and does not contain the specific provision held to be invalid in *State* v. *Conlon.* The Act, however, provides in § 4663 that "every itinerant vendor. . . . . desiring to do business in this State, shall deposit with the treasurer of the State the sum of five hundred dollars as a special deposit"; another section (4666) provides that the license shall be for one year, that such deposit, while in the hands of the treasurer, shall be subject to attachment, garnishee process and execution in behalf of creditors whose claims arise in connection with business done in this State, and that upon the expiration or surrender of the license the treasurer shall pay back to the licensee the amount of the deposit, or such portion thereof as may then remain in his hands.

Is this provision, whether regarded as a part of the licensing process, or as a condition to the transaction of the business mentioned in addition to and independent of the requirement to take out a license, obnoxious to any constitutional provision? The answer to this question depends largely upon what is the transaction, business or occupation which the statute prohibits unless the deposit is made. Section 4662 is as follows : " The words ' itinerant vendor ' for the

purposes of this chapter shall be construed to mean and include all persons. . . . . who engage in a temporary or transient business in this State, either in one locality or in traveling from place to place, selling goods, wares, and merchandise, and who, for the purposes of carrying on such business, hire, lease, or occupy any building or structure for the exhibition and sale of such goods, wares, and merchandise. No itinerant vendor shall be relieved or exempted from the provisions and requirements of this chapter by reason of associating himself temporarily with any local dealer, auctioneer, trader, or merchant, or by conducting such temporary or transient business in connection with, or in the name of any local dealer, auctioneer, trader, or merchant. The provisions of this chapter shall not apply to sales made to dealers by commercial travelers or selling agents in the usual course of business, nor to *bona fide* sales of goods, wares, and merchandise by sample for future delivery, nor to hawkers on the streets or pedlers from vehicles. . . ."

The defendant maintains that in view of this definition of itinerant vendor, in its relation to the remaining parts of the chapter, it is evident the true meaning of the Act is that the thing forbidden to be done is the sale of goods of any kind whatever at a fixed place, that is, in a building or structure adapted to and occupied for the exhibition and sale of goods, whether at public auction or private sale, during a limited time or any short period of time; that "temporary or transient," as here applied to a business conducted in a fixed place, necessarily implies a stationary business as contradistinguished from a business conducted while moving about, and a business carried on for a limited time of short duration as distinguished from one carried on indefinitely without any limit as to special purpose or duration of time; that every person who enters upon a sale of this description does the act and engages in the business forbidden by the statute, unless a license therefor is first obtained; that the person who obtains the license may prolong the otherwise forbidden transaction for one year, or, if it does not last so long, may repeat the transaction once or more

within the limit of one year, either in the same locality or in different places, but that the thing forbidden to be done without a license is any exhibition and sale of goods in a building occupied for that purpose, for a limited or short time, not exceeding in duration one year; that the necessity for a license is due solely to the character of the business, and that character is determined only by three concurring earmarks, namely: (1) the kind—any exhibition and sale of goods; (2) the place—any building or structure leased or occupied for such exhibition and sale; (3) the duration —any limited or short period of time not exceeding one year; and that these concurring earmarks define the subject of the legislation in question. The defendant further contends that the necessity for a license has no relation to the character of the person to whom it is issued, in respect to his residence, habits, capacity, or otherwise; that it is immaterial whether he be a resident or citizen of this State, or of any other, whether he has never left the town in which he was born or has been an habitual wanderer from place to place, whether he engages in the defined business as a single isolated transaction or as one of two or more successive transactions, or as an adjunct to a long established and permanent business, whether he engages in this business as an executor, a trustee in bankruptcy, an officer of court, or a sheriff, whether he is a farmer, a gardener, or a fisherman, a craftsman or an artist, disposing in this way of the product of his industry or skill,—if he sells goods in a building for a short time, less than one year, he is the person designated in the Act as an itinerant vendor, who must take out a license before he can sell any goods in the manner described.

If this is the real meaning of the Act, it may be true that an absolute prohibition of any such sale of goods, by any person who cannot or will not surrender $500 of his property to the State, is beyond the limit of legislative power. The right of every citizen to sell merchandise, harmless in its nature or necessary to the support of life, in a harmless way not infringing any rights of others and not injurious or dangerous to his neighbors or to the public safety and interests,

State *v.* Feingold.

is one of those rights which our Constitution by its clear declaration was framed to secure and perpetuate. It would seem clear that such a sale cannot become a source of danger to the public merely because it is conducted in a building appropriate for the purpose for some short period of time less than one year. Moreover, the claim—that the right of selling merchandise, which is in effect granted by the Act to those persons, and those persons only, who are able and willing to submit to the seizure of their property, is not an exercise of that power of protective legislation so broadly vested in the General Assembly, but is an unwarranted interference with the protected rights of citizens, arbitrarily discriminating between them in the exercise of their rights and an arbitrary appropriation of property to uses not public, and is therefore obnoxious to the provisions of article first of the Constitution securing to all citizens equality in rights and protection in the enjoyment of their property,—is not without support in reason or in decisions on this subject. *State* v. *Conlon,* 65 Conn. 478; *In re Jacobs,* 98 N. Y. 98; *Butchers' Union Co.* v. *Crescent City Co.,* 111 U. S. 746; *Livestock, etc., Asso.* v. *Crescent City, etc., Co.,* 1 Abb. (U. S.) 388—398; *Cleveland* v. *Clements Bros. Construction Co.,* 67 Ohio St. 197; *Commonwealth* v. *Perry,* 155 Mass. 117; *Braceville Coal Co.* v. *The People,* 147 Ill. 66 ; *State* v. *Loomis,* 115 Mo. 307. We do not pursue this inquiry further than to indicate the serious nature of the objections to the validity of the Act, unless it is susceptible of a construction different from that claimed by the defendant.

The provisions of the Act are novel, its inducing purpose not altogether clear, and its language not free from doubt. In such case we are bound, if possible, to give the Act such reasonable construction as may be consistent with its validity. We are satisfied upon a careful examination of the Act with this view, that a meaning may be and must be attributed to it which makes the thing prohibited without license not a single transaction which constitutes a transient business for the sale of goods as described, but a distinct and continuous occupation involving a constantly recurring succession of such

transactions, distinguishing the trader whose stock is replaced as fast as sold for the purposes of continuous and unbroken sale during an indefinite period from the trader who habitually, for an indefinite period, disposes of each supply of stock as a separate transaction. In both cases the occupation would be the selling of goods in a building as an occupation, the difference being in the manner of carrying on such selling of goods. In the one case the seller disposes of his goods through a process of selling which may be described as unbroken, and in the other case through a process which may be described as intermittent; and the occupation is one that is carried on by itinerant vendors, that is, by persons who, in the practice of this intermittent trading, do not confine their business to one permanent place but move about from place to place. The Act, therefore, does not forbid a transient sale by an executor, etc., nor by any person who engages in the sale solely as a single transaction, and does not forbid any transient sale unless made by one of a class of wandering intermittent traders described in the Act as itinerant vendors. We cannot say that in providing for the licensing of such a class of tramp traders to ply their occupation in any town in the State, the legislature may not require some guaranty or evidence that the applicant does not intend to use the possibilities that may be peculiar to such an occupation for purposes of fraud or imposition; and we cannot affirm *a priori*, or from any facts brought to our judicial knowledge, that there are no opportunities for fraud or imposition peculiar to such an occupation that may lawfully call for some such guaranty. The legislature has seen fit to accept a deposit by the applicant as sufficient evidence of his intention and ability to ply his occupation with safety to the public. The wisdom and sufficiency of this crude test is a question for the legislature rather than the court. We do not think it is so wholly and clearly inappropriate and unrelated to the protection sought to be given that it must be treated as a mere arbitrary and unwarranted restriction on trade or competition in trade.

It is unnecessary to inquire now whether the deposit thus

made can be lawfully subjected to attachment and execution in behalf of the future general creditors of the licensee, or whether the only effect of the Act is to subject the deposit to the satisfaction of claims arising from fraud and imposition practiced by the licensee in his operations under the license. It is sufficient that the requirement of a deposit to be held by the State during the continuance of the license does not render the Act invalid. Even if the provision added in behalf of creditors could not be sustained, the provisions for a deposit would not for that reason become void; it is so far independent of the other that it may stand if the other fails. *State* v. *Wheeler*, 25 Conn. 290, 298. For these reasons we think the provision requiring the applicant for a license to deposit with the State treasurer $500, to be held by him during the continuance of the license, is a part of the licensing process intended to secure the public from the fraud and imposition which the legislature deems peculiarly possible in the occupation licensed, and is not so clearly foreign to this purpose that the court can properly treat it as a mere arbitrary restriction on trade, and obnoxious to the constitutional provisions which in that case might be applicable. A somewhat similar provision, contained in Acts similar to the one under discussion, but not precisely the same, has been sustained in courts of other States under constitutions which in some respects differ from our own. *Commonwealth* v. *Crowell*, 156 Mass. 215; *State* v. *Harrington*, 68 Vt. 622; *State* v. *Foster*, 22 R. I. 163. We do not deem it necessary to examine critically the analogies between these cases and the one before us. In drawing the line which separates the field of arbitrary interference with protected rights of property and freedom in personal action, from that of protective legislation in behalf of public safety, each case must fall on one or the other side in accordance with its particular circumstances.

In view of the stipulation of counsel, confining the demurrer to the single question of the validity of the Act under which the prosecution is brought, we think the demurrer should be overruled.

The Criminal Court of Common Pleas is advised to over-rule the demurrer and to render judgment for the State. No costs in this court will be taxed for either party.

In this opinion the other judges concurred.