DONALD O. HAMMERBERG, MILK ADMINISTRATOR v. FRANK S. HOLLOWAY ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued December 5, 1944—decided February 21, 1945.

*George F. Hanrahan,* with whom was *Donald C. McCarthy,* for the appellants (defendants).

*Thomas J. Conroy,* assistant attorney general, with whom were *Jack Rubin* and, on the brief, *Francis A. Pallotti,* attorney general, for the appellee (plaintiff).

JENNINGS, J. The plaintiff as milk administrator had judgment that the defendant milk dealers pay their producers additional sums through his office. The major part of the judgment resulted from the allowance of a claim that the milk furnished by the producers contained more butterfat than the amount upon

which payments made to them by the defendants had been based, as shown by tests ordered by the plaintiff. The defendants appealed on the principal grounds that the tests were unfair, illegal and did not give the correct result. Stipulations were made during the trial and included in the finding which materially narrowed the issues. These stipulations may be summarized as follows:

The defendants are producers of and dealers in milk. They appeal in the latter capacity. The plaintiff is the duly appointed, qualified and acting milk administrator, who properly brought this action under General Statutes, Sup. 1941, § 344f (a). He issued Order No. 1, effective October 1, 1941, and amendments thereto by authority of §§ 337f and 338f, after compliance with the statutory requirements, and the defendants took no appeal therefrom nor do they contest its validity. This order contained the following provisions:

"ARTICLE VI. Payments to producers.

"B. *Butterfat Differential.* If any dealer has received from any producer, during the delivery period, milk having an average butterfat content other than 4.0 percent, such dealer, in making payments pursuant to Section A of this Article, shall add to the uniform price for such producer for each one-tenth of 1 percent of average butterfat content in milk above 4.0 percent not less than, or shall deduct from the uniform price for such producer for each one-tenth of 1 percent of average butterfat content in milk below 4.0 percent not more than, 4 cents per hundredweight. If the dealer does not determine the butterfat content of milk received from producers the average butterfat content of a producer's milk shall be considered to be that determined by a test performed by

the Dairy and Food Commission made during a period not longer than 3 months before the first day of such delivery period. In the absence of such a test the milk of such producer shall be considered to contain 4.0 percent of butterfat.

"F. *Adjustment of errors in payments.* Whenever verification by the Administrator of the payment to any producer for milk delivered to any dealer discloses payment to such producer of less than the amount required by this Article, the dealer shall pay such difference to the producer not later than the time of making payment next following such disclosure."

The plaintiff made an audit of the books of the defendants from October, 1941, to November, 1942, both inclusive, which resulted in a determination that the producers were entitled to certain payments, the principal item in which, and the only one in dispute, was the sum of $1556.58, based on butterfat differentials. The defendants claimed that the tests on which this figure was based were unfair and illegal.

, In accordance with Order No. 1 as amended, the plaintiff used the results of tests made by the dairy and food commission as determinative of the butterfat content of the milk. Samples of the milk furnished the defendants by their producers were taken by inspectors of the dairy and food commission on the following dates: November 25, 1941, and March 5, May 25, June 23, July 20, August 19, September 9, October 20, and November 18, 1942, with the exception of the milk of one producer, whose product was sampled on July 24, 1942, rather than on July 20, 1942. All samples so taken were tested within twenty-four hours in the laboratory of the dairy and food commission by the Babcock method for testing butterfat, which method is a standard test for determining butterfat

content and the most practical test for that purpose known in the milk industry. The results of the tests made in November, 1941, were used by the plaintiff to determine the minimum prices the defendants should have paid their producers for the months of November and December, 1941, and January and February, 1942. The results of the tests made in March, 1942, were similarly used for the months of March and April, 1942, and all the other tests for the respective months in which they were made. The defendants do not hold a permit from the dairy and food commission to buy milk on the basis of their own tests.

General Statutes, § 2464 (g), as amended, Cum. Sup. 1935, § 942c, provides that buyers of milk or cream on the basis of the percentage of butterfat contained therein as determined by the Babcock test shall make a test every eleven days and take a daily sample. These are built up to a composite sample which is eventually the subject of the test. Section 2464 (m) provides that any person violating the provisions of the act shall be subject to a criminal penalty.

The finding, as corrected, discloses the following additional facts: The tests made by the dairy and food commission were made from one day's sample taken on the days indicated, were not made from composite samples, were not made more than once a month and at times were two or three months apart. Variations of one-half of 1 per cent in butterfat content from day to day is common and variations from day to day in individual cows and individual herds of as much as 1 per cent occur frequently. The defendants purchased and paid for milk from their producers on an assumed 4 per cent butterfat content, as provided for by the order.

A principal claim of the plaintiff was that the defendants were precluded from making any defense to

this action because they failed to appeal from the promulgation of Order No. 1. The defendants do not complain of the order or any of its terms. They had no reason to appeal. They have merely filed a legal defense to the statutory action brought by the plaintiff. This they had the right to do. *Stark* v. *Wickard,* 321 U. S. 288, 305, 64 Sup. Ct. 559. No order other than Order No. 1 from which the defendants could have appealed appears in the record. The plaintiff's claim in this regard is not valid.

The defendants claim that the trial court had no power to adjudge that payments to the producers should be made through the plaintiff's office. The order provides that a dealer shall pay to his producers deficiencies determined by the plaintiff. The judgment reads: "That the defendants shall pay to their producers, through the plaintiff the Milk Administrator. . . ." There is no basis for this in the statute or order, nor is it claimed in the complaint. There was error in the form of judgment.

The validity of legislation regulating the milk industry and the power of the legislature to delegate its authority can, in general, no longer be questioned. *State* v. *Stoddard,* 126 Conn. 623, 626, 13 Atl. (2d) 586; *Nebbia* v. *New York,* 291 U. S. 502, 54 Sup. Ct. 505. The exercise of this delegated power by the promulgation of regulations cannot override the statute and both should be read together when possible. 1 Vom Baur, Federal Administrative Law, § 499. It is found that the test performed by the dairy and food commission at the request of the milk administrator was the Babcock test. General Statutes, Cum. Sup. 1935, § 942c, defines the way in which that test should be made in detail. The dairy and food commission did not comply with the requirements of the statute in making its tests. It follows that payment by the

defendants to their producers in accordance with the audit of the plaintiff based on these tests not made in accordance with the statute would constitute a violation thereof subjecting them to a criminal penalty. The large powers of the plaintiff do not give him authority to require the defendants to commit a crime. This conclusion does not affect the other items found to be due the producers.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment in accordance with this opinion.

In this opinion the other judges concurred.