HUGH M. ALCORN, JR., STATE'S ATTORNEY,
EX REL. ABRAHAM H. BASKIN
*vs.*
CHARLES J. BARTLETT ET AL.

Superior Court        Hartford County        File No. 73378

MEMORANDUM FILED DECEMBER 17, 1945

*Pelgrift* and *Blumenfeld*, of Hartford, for the Plaintiff.

*William L. Hadden*, Attorney General and *Harry L. Brooks*, Assistant Attorney General for the Defendant.

MELLITZ, J. The plaintiff seeks a writ of mandamus to compel the defendants as the Connecticut Medical Examining Board to issue a certificate to the effect that he has been found qualified to practice medicine and surgery. The certificate is

essential to his obtaining a certificate of registration authorizing him to practice in this State, as required by section 1120c of the 1935 Cumulative Supplement to the General Statutes.

The following facts are not in dispute. The plaintiff is a citizen of the United States and a resident of the town of West Hartford. He received his medical education in an approved medical school where he was a resident student through not less than four graded courses of not less than thirty-two weeks each and received a diploma of graduation from such school. He is a person of good moral character and professional standing as a physician and surgeon. For a period of ten years immediately preceding the date of his application he was engaged in the practice of medicine in the United States. In 1943 he was admitted to and passed the regular state board examination conducted by the medical examining board of the State of New York and was granted a medical license to practice medicine and surgery in the State of New York. The examination was of as high grade as that required for a certificate of registration in this State. Prior to November 20, 1944, he made application to the defendant board for acceptance and approval of the license issued to him by the State of New York, and he was notified to appear before the board on November 28, 1944. He appeared before the board on that date and a number of oral questions were propounded to him. No record was made of the questions nor of the plaintiff's answers thereto. On November 30, 1944, the secretary of the board wrote him "that at the recent examinations given by the Board you failed to meet the requirements and are not now recommended for licensure." Thereafter the plaintiff sought to ascertain the reasons for the board's action. He could obtain no information beyond that contained in the letter of November 30, 1944, and he thereupon instituted these proceedings.

Section 477f of the 1941 Supplement to the General Statutes prescribes the requisites for a certificate of registration. The portions of section 477f here pertinent are as follows: "Except as hereinafter provided, no person shall receive a certificate of registration under the provisions of section 1120c until he shall have passed an examination before one of the examining boards appointed for such purpose by the governor, nor until he shall have filed with the state department of health a statement in duplicate, signed by a majority of the members of such board, certifying to the fact that the person named therein has been

found qualified to practice medicine and surgery . . . . "In lieu of the examination herein required, any of the examining boards, appointed under the provisions of section 1122c may, under such regulations as the board may establish, accept a license from the board of medical examiners of any state in the United States or the District of Columbia or of any agency in such jurisdictions authorized to issue licenses to practice medicine. . . ."

It has been held that the statute prescribes two methods of obtaining a license to practice medicine and surgery in this State. "Section 988e [of which section 477f is the successor], aside from the provision made for certain special cases, prescribes two methods by which the certificate of registration essential under §1120c to the practice of medicine in this state may be obtained: first, by passing an examination given by the defendant board; and second, by obtaining acceptance by it, under the provision already quoted, of a license issued by another state 'in lieu of the examination'." *State ex rel. Markley vs. Bartlett,* 130 Conn. 88, 91.

Thus in establishing the requirements governing admission to practice medicine, the Legislature had in contemplation that, aside from certain special cases, there are two classes of applicants. One class is required to pass an examination which is specifically prescribed by section 478f, entitled "Examination", wherein particular subjects are enumerated as subjects which the examination must cover, and the board is authorized to examine such applicants "in such other subjects as the examining board may deem necessary, provided each applicant for examination shall be notified concerning the subjects in which he is to be examined." The statute goes on to require that "both questions and answers shall be filed with and preserved for at least six years by the state department of health."

No examination is prescribed in the statutes for credential applicants. A regulation adopted by the defendant examining board, and which has been in effect for a number of years, requires credential applicants to appear before the board for an oral examination. Notice of the regulation is contained in a bulletin entitled "Information Regarding Examinations" which is furnished to all applicants, and it is set forth therein, as to credential applicants, that "applicants will be given an oral examination in practical subjects." No further information is

given as to what the examination will cover nor as to what the board means by the phrase "practical subjects." The examination usually consists of a brief session during which members of the board interrogate the applicant. No notice is given of the particular subjects to be inquired into, nor is any record made of the questions or answers. The practice has been to propound different questions to the different applicants. The questions may relate to one or more subjects, and may or may not be prepared beforehand. It would appear that the board, as a board, does not prepare or determine what questions are to be propounded, and that the questions propounded are such as occur to the individual members while the applicant is before the board.

The statutes now in effect, sections 477f and 478f, were both enacted as part of chapter 316 of the Public Acts of 1941, which specifically repealed sections 2747 and 2749 of the General Statutes, Revision of 1930, and the amendments thereto, formerly governing admission to practice medicine. Section 2749, which was the statute regulating the examination to be given to applicants who were required to pass an examination, prescribed that the examination be in writing. The present statute contains no such provision. The former statute required that the examination cover the same subjects as are contained in the present statute, but gave the board no discretion to add such other subjects as the board might deem necessary. The present statute gives the board such discretion but provides specifically that each applicant is to be notified as to the subjects, if any, in which he is to be examined, if the board intends to require an examination in subjects other than the subjects enumerated in the statute. Both the former and the present statute contain the requirement that questions and answers shall be filed with the State Department of Health and preserved for at least six years.

It will be seen, therefore, that for the class of applicants required to pass an examination, the Legislature has provided not only that such applicants be given notice of all subjects in which they are to be examined, but provision is also made for the preservation of the results of the examination for a period of at least six years.

In view of these specific provisions regulating the examinations to be given to the class of applicants subject to examina-

tion, it can hardly have been contemplated by the Legislature that credential applicants, as to whom the Legislature made no requirement of an examination, were to be made subject to any examination the board might see fit to require, without any obligation on the part of the board to notify an applicant of the subjects in which an examination is to be conducted, nor to preserve a record of the questions propounded and the applicant's answers thereto.

The function of the defendant board is to protect the health and welfare of the inhabitants of the State by seeing to it that no person shall be licensed to practice medicine and surgery unless qualified to meet the standards established for such practitioners in this State. To that end, the present statute, section 477f, gives the board express authority to establish regulations to govern the acceptance of licenses issued by another state in lieu of examination. But such regulations must carry into effect the will of the Legislature as expressed in the statute. 1 *vom Baur, Federal Administrative Law* (1942), §490. The requirements for licensure are established by the Legislature in the statute and not by regulations of the board. Regulations which alter, abridge, enlarge or modify the controlling statute are beyond the power of the board to enact. *vom Baur, supra,* §499. A regulation which imposes additional requirements beyond those contained in the statute cannot be effective to override the statute. *Hammerberg vs. Holloway,* 131 Conn. 616, 621. "The power of an administrative officer or board to administer a . . . statute and to prescribe rules and regulations to that end is not the power to make law . . . but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity." *Manhattan General Equipment Co. vs. Commissioner of Internal Revenue,* 297 U. S. 129, 134, 80 L. ed. 528, 531. The board merely exercises the administrative function to effectuate the definitely declared legislative policy. *State vs. Stoddard,* 126 Conn. 623, 631; *State ex rel. Markley vs. Bartlett, supra,* p. 95.

An applicant who is qualified to meet the established standards for medical practitioners in this State and seeks to be licensed on the basis of a license issued by another state may be required to comply with such reasonable and proper regula-

tions as the board may see fit to promulgate. Such regulations, however, must apply alike to all applicants and be within the framework of the law.

"It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex and condition. This right may in many respects be considered as a distinguishing feature of our republican institutions. Here all vocations are open to every one and on like conditions. All may be pursued as sources of livelihood, some requiring years of study and great learning for their successful prosecution. The interest, or, as it is sometimes termed, the estate acquired in them, that is, the right to continue their prosecution, is often of great value to the possessors, and cannot be arbitrarily taken from them, any more than their real or personal property can be thus taken." *Dent vs. West Virginia,* 129 U. S. 114, 121.

Our statutes clearly establish the legislative intention to except from the requirement of passing the examination provided for in section 478f, doctors who have passed examinations by other boards, provided the other requirements set forth in the statutes are met. The board would have no power, by regulation, to require a credential applicant to submit to an oral examination of the same scope as that required in section 478f for applicants who must pass an examination. How much less of an examination, if any, the board may reasonably require of a credential applicant it is unnecessary to determine here. The regulation adopted by the board requiring credential applicants to appear for oral examination in "practical subjects" fails to set forth any information as to the nature and scope of the examination contemplated, from which it might be possible to determine whether the examination is one within the power of the board to require. It fails to give an applicant any notice of the subjects in which the examination is to be conducted, and makes no provision for a preservation of a record of the examination whereby an applicant and the public may be safeguarded from an unwarranted refusal of the board to issue a certificate, in conformity with the declared legislative policy found in the provisions of section 478f. The effect of the regulation would seem to be to permit the board to grant or withhold a certificate in the case of a credential applicant in its own uncontrolled discretion.

In *Wilson vs. State Board of Registration,* 228 Mich. 25, 28, 199 N. W. 643, 644, where a writ of mandamus was sought to compel the Michigan State board of registration in medicine to issue a certificate of registration, the board, in its answer, gave no grounds or reason for its refusal to issue the certificate. The court, in granting the writ of mandamus, observed: "In the answer in the instant case the defendant has abstained from giving the court any reason for its action, any facts upon which it was based if any facts were before it. In effect, it has replied to our order to show cause that it has exercised its discretion and it is no concern of the court what prompted it so to do. . . . If such an answer is sufficient to our order to show cause then the actions of such boards possessed of discretionary power are immune from judicial inquiry . . . they could register or refuse to register without giving any reason at all for their action; they could at will register one applicant and reject another possessed of the same qualifications. . . . This is not the exercise of discretion but of arbitrary will."

It may be observed that in the present proceeding the secretary of the defendant board appeared and testified but was unable to inform the court as to the details of the examination of the plaintiff by the board, the nature of the questions propounded to him, nor as to the reasons for the refusal of the board to issue a certificate, beyond the bare fact that the board did not approve his application. The minutes of the board meeting, introduced in evidence, are no more enlightening, and contain only the following references to the examination of credential applicants: "Upon the conclusion of the executive session of the Board twenty-five oral credential candidates were interviewed, of which twenty were found acceptable and five were rejected. Data concerning these candidates is a part of this record." Then follows, after a listing of the names of the recommended candidates, the statement: "The following candidates appeared for oral examination but failed to meet the requirements of the Board and are not recommended for licensure at this time." After this statement there is appended a list containing the names of five candidates, including the name of the plaintiff.

It is conceded by the defendant board that the plaintiff is a person of good moral character and professional standing as a physician and surgeon and that his credentials meet the requirements set forth in the statutes. Since it must be conclud-

ed that the regulation adopted by the board and governing the examination of credential applicants is not in harmony with the legislative intention expressed in the statutes, the effect is that the applicant must be held to have shown compliance with all of the prerequisites presently in effect governing the issuance of a certificate.

The provision that the board "may accept" a license issued in another state is mandatory, entitling an applicant to a certificate as of right if the requirements of the statute are fully met. *State ex rel. Markley vs. Bartlett, supra,* p. 93.

The defendant board is therefore ordered to issue to the plaintiff a certificate as described in section 477f to the effect that he has been found qualified to practice medicine and surgery in this State.