STATE OF CONNECTICUT *v.* IRVING GORDON

BALDWIN, O'SULLIVAN, WYNNE, DALY and COMLEY, Js.

Argued June 14—decided July 24, 1956

*Irwin E. Friedman,* with whom, on the brief, was *Arthur Levy, Jr.,* for the appellant (defendant).

*James J. O'Connell,* prosecuting attorney, for the appellee (state).

BALDWIN, J. The information charged the defendant with a violation of an ordinance of the town of Stratford. He was presented in the Court of Common Pleas in Fairfield County. His demurrer to the information was overruled, whereupon he entered a plea of not guilty and elected to be tried to the court without a jury. The court found him guilty, and he has appealed.

The ordinance prohibited the sale of merchandise at auction on Sunday and after 6 o'clock in the after-

noon of any day. It is set forth in the footnote.[1] The defendant challenges the validity of the ordinance on two grounds: (1) The legal procedure for its adoption was not followed; and (2) the ordinance is an arbitrary, unreasonable and discriminatory attempt to exercise the police power and is therefore unconstitutional.

The ordinance purports to have been adopted in

[1] "Section 1. Except as hereinafter provided, no person shall sell or dispose of any goods, wares or merchandise at public auction on Sundays and after 6:00 P.M. in the afternoon of any day.

"Section 2. Notwithstanding the foregoing prohibition and subject to the limitations hereinafter contained, a public auction for the sale of goods, wares and merchandise may be held on Sunday or after 6:00 P.M. in the afternoon of any day provided the auction is sponsored and conducted exclusively by a charitable, civic, educational, fraternal, veterans, religious, grange, or volunteer fire department organization, and such organization shall first obtain a written permit therefor from the Chief of Police upon the payment of a permit fee of $1.00.

"Section 3. No such permit shall be issued to any such organization unless it shall have been organized for a period of not less than two years prior to the date of application for such permit, and unless the promotion and operation of the auction, except for the employment of an auctioneer as provided in Section 4, shall be confined to the duly qualified members of the sponsoring organization or group.

"Section 4. In the conduct and operation of any auction on Sunday or after 6:00 P.M. in the afternoon of any day under the permit herein provided for, the permittee may engage the services of not more than one auctioneer who shall have been duly licensed under the provisions of an ordinance of the Town of Stratford providing for the licensing of auctioneers.

"Section 5. The Chief of Police shall not issue more than three permits to the same organization to conduct an auction on Sunday or after 6:00 P.M. in the afternoon of any day in any one calendar year.

"Section 6. Any person who shall violate any of the provisions of this ordinance shall be fined not more than $100.00 for each offense.

"Section 7. This ordinance shall not be construed to conflict with the provisions of Section 990B of the General Statutes and the restrictions and limitations therein contained with relation to the sale of gold or gold-plated ware, silver or silver-plated ware, platinum ware, watches, jewelry, precious stones, cut glass or china ware.

"Section 8. This ordinance shall be in force and take effect thirty days from and after passage."

1954 under the authorization of § 197c of the 1953 Cumulative Supplement (as amended, Cum. Sup. 1955, § 248d) to the General Statutes and § 1 of the charter of the town of Stratford. 22 Spec. Laws 335, No. 513, § 1. Both confer the necessary power to adopt legislation regulating auctions. Section 5 of the charter provides in part: "No ordinance shall be passed until it has been read at two separate meetings [of the council] or the requirement of readings at two separate meetings has been dispensed with by a vote of seven members of the council. The final reading shall be in full, unless the measure shall have been printed or typewritten and a copy thereof furnished to each member prior to such reading." 18 Spec. Laws 1049, § 5. The ordinance was presented at a meeting of the council on June 21, 1954, and read in full. A motion was then made and seconded to adopt it, as read, and to refer it to the ordinance committee for a public hearing. An amendment to change the word "sundown" in § 1 to "6 p.m." was offered and accepted by the maker and the seconder of the motion. The amendment and the motion to adopt the ordinance as amended and refer it to the ordinance committee were then approved in two separate votes by roll call, the vote being seven for and three against. On July 1, 1954, a copy of the minutes of the meeting of June 21, 1954, containing the text of the ordinance in full with a notation that the word "sundown" had been changed to "6 p.m.," was sent to each member of the council. Thereafter, the ordinance was duly advertised in "The Bridgeport Post" for a public hearing before the ordinance committee. This hearing was held on July 6, and the committee reported to the council on July 12, when the matter was tabled until the next regular meeting of the council. At the meeting on July 12,

the minutes of the meeting of June 21, including the full text of the ordinance, were read in full and approved. On September 20, at a duly recessed regular meeting of the council, a motion to accept the report of the ordinance committee that the ordinance not be adopted was rejected unanimously. A motion to dispense with the reading of the ordinance and to adopt it was then approved unanimously on a roll call vote, all ten members of the council being present and voting. In the light of these facts, the claim of the defendant that the ordinance as "finally" adopted was never actually read, as required by the law, is bootless. His further claim that when the ordinance committee made its report to the council the results of the public hearing were misrepresented is equally useless. There is no statute or ordinance or rule of the council before the court which requires the reference of a proposed ordinance to a committee for a public hearing or that the council be guided by the recommendations of any such committee. We conclude that, as to procedure, the ordinance was legally adopted.

We will now consider the charge that the ordinance violates the due process and equal protection clauses of the federal and state constitutions. U.S. Const. Amend. XIV § 1; Conn. Const. Art. I §§ 1, 9, 12. The ordinance is an exercise of the police power conferred upon the town by statute. This power comprehends a system of internal regulation, to preserve order and prevent crimes and misdemeanors, and to enable people to live together in close association, preserving to each his individual rights and privileges but so controlling them that their enjoyment is reasonably consistent with the enjoyment of like rights and privileges by others. 2 Cooley, Constitutional Limitations (8th Ed.) p. 1223; see *Allyn's*

*Appeal,* 81 Conn. 534, 538, 71 A. 794. The limit of the exercise of the police power is necessarily flexible, because it has to be considered in the light of the times and the prevailing conditions. *State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294. To be constitutionally valid, a regulation made under the police power must have a reasonable relation to the public health, safety, morality and welfare. *Calve Bros. Co.* v. *Norwalk,* 143 Conn. 609, 616, 124 A.2d 881; *Amsel* v. *Brooks,* 141 Conn. 288, 294, 106 A.2d 152; *Corthouts* v. *Newington,* 140 Conn. 284, 288, 99 A.2d 112. Whether the times and conditions require legislative regulation, as well as the degree of that regulation, is exclusively a matter for the judgment of the legislative body—in this instance, the town council of Stratford. Courts can interfere only in those extreme cases where the action taken is unreasonable, discriminatory or arbitrary. *Carroll* v. *Schwartz,* 127 Conn. 126, 130, 14 A.2d 754; *State* v. *Miller,* 126 Conn. 373, 377, 12 A.2d 192. When a question of constitutionality is raised, the court presumes validity and sustains the legislation unless it clearly violates constitutional principles. *Amsel* v. *Brooks,* 141 Conn. 288, 294, 106 A.2d 152; *Schwartz* v. *Kelly,* 140 Conn. 176, 179, 99 A.2d 89. If there is a reasonable ground for upholding it, courts assume that the legislative body intended to place it upon that ground and was not motivated by some improper purpose. *Walsh* v. *Jenks,* 135 Conn. 210, 222, 62 A.2d 773; *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 111, 90 A.2d 862. This is especially true where the apparent intent of the enactment is to serve some phase of the public welfare. *Lyman* v. *Adorno,* 133 Conn. 511, 514, 52 A.2d 702; *Legat* v. *Adorno,* 138 Conn. 134, 145, 83 A.2d 185.

The public sale of merchandise is a business which concerns many people in many ways. Legislation regulating it which has a reasonable relation to the public good and is not arbitrary, prohibitive or discriminatory has generally been sustained. *Walp* v. *Mooar,* 76 Conn. 515, 521, 57 A. 277 (recording sales of entire stocks of merchandise); *State* v. *Reynolds,* 77 Conn. 131, 134, 58 A. 755 (selling provisions from a temporary stand near a fairground); *State* v. *Feingold,* 77 Conn. 326, 332, 59 A. 211 (itinerant vendors); *State* v. *Stokes,* 91 Conn. 67, 70, 98 A. 294 (sale of milk in bulk); *Hammerberg* v. *Holloway,* 131 Conn. 616, 621, 41 A.2d 791, and *Hammerberg* v. *Leinert,* 132 Conn. 596, 599, 46 A.2d 420 (regulation of milk industry); *State* v. *Cullum,* 110 Conn. 291, 296, 147 A. 804 (regulation of public markets); *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 678, 179 A. 195 (sale of optical goods); *Carroll* v. *Schwartz,* 127 Conn. 126, 131, 14 A.2d 754 (unfair sales practices); *Amsel* v. *Brooks,* 141 Conn. 288, 298, 106 A.2d 152 (manufacture and sale of dental appliances). In each of these cases, there was present one or more factors which made the particular legislation reasonable and proper as an exercise of the police power.

In the instant case, the court found the following facts: The auction at which the defendant sold an item of merchandise and was subjected to arrest was a key operation in the business conducted by the owners of a so-called auction market. There were originally three such auction establishments in the town, at least two of which existed at the time when the plaintiff was arrested. Their purpose was the attraction of large numbers of people. Concessionaires leased, from the owners of the auction markets, booths from which they sold merchandise

and foodstuffs until late in the evening. One of the auctions was conducted on two days in each week, and another on a different day. Many people came to them from other towns, causing a heavy volume of automobile traffic. Every Saturday 6000 to 7000 people would come to the grounds of one of the auction markets, and 90 per cent of them would come in automobiles. It is manifest that the method of doing business at these auction markets was calculated to bring crowds of people together during relatively short periods of time in the evening. Whenever crowds of people congregate, especially after dark, whether at regular or irregular periods, problems of safety, health and morality which affect orderly and peaceful living are created. It is unnecessary to enumerate them. These problems must be met by such measures as the wisdom and judgment of those in charge of the local government may find feasible and effective. The argument that to prohibit auctions after 6 p.m. is fixing the time arbitrarily and unreasonably with respect to the hours of darkness is not persuasive. In our seasons the time when darkness falls varies from 4:30 o'clock in the afternoon during midwinter to 7:30 o'clock in the evening during midsummer. The council was required, in order to give definiteness to the ordinance, to fix some time with reasonable certainty.

The defendant claims that the ordinance violates constitutional guarantees because it is discriminatory. He argues that an auctioneer licensed under § 990b of the 1951 Cumulative Supplement (Cum. Sup. 1955, § 2329d) may, upon posting a bond, receive permission from the state police commissioner to sell platinum, gold or silver ware, watches, jewelry, precious stones, cut glass and china at auction

until 11:00 p.m. The application of this statute is expressly excepted in the ordinance. The reason is obvious. When statutes and ordinances dealing with the same matter conflict, the statute prevails. But the state may delegate the power to local government, as it has done in this instance, to deal with a particular field of regulation, leaving it to the local authority to act so as not to be in conflict with statutory enactments. *Shelton* v. *City of Shelton,* 111 Conn. 433, 438, 150 A. 811. The fact that the state legislature, from the viewpoint of the entire state, acts in a limited way, while local government, from the viewpoint of local problems and conditions, acts in a more comprehensive but not inconsistent manner, does not ipso facto make the ordinance discriminatory.

The defendant's further argument that the ordinance is discriminatory because it excepts from its application certain religious, charitable and civic organizations is without force. Classification and the application of legislation are matters for legislative determination. The rule is that the classification "shall be reasonable, not arbitrary, and that it shall rest upon distinctions having a fair and substantial relation to the object sought to be accomplished by the legislation." *Atchison, T. & S.F. Ry. Co.* v. *Vosburg,* 238 U.S. 56, 59, 35 S. Ct. 675, 59 L. Ed. 1199; *State* v. *Hurliman,* 143 Conn. 502, 506, 123 A.2d 767. The present ordinance applies alike to all who would sell merchandise at public auction for individual private profit, and it is not discriminatory. We conclude that the ordinance is a proper exercise of the police power reposed in the town council of Stratford.

Courts in other states have sustained the constitutionality of ordinances similar to the one under

consideration. *Biddles, Inc.* v. *Enright,* 239 N.Y. 354, 361, 146 N.E. 625; *Chicago* v. *Ornstein,* 323 Ill. 258, 260, 154 N.E. 100; *Minneota* v. *Martin,* 124 Minn. 498, 501, 145 N.W. 383; *Holsman* v. *Thomas,* 112 Ohio St. 397, 406, 147 N.E. 750; *Clein* v. *Atlanta,* 164 Ga. 529, 536, 139 S.E. 46; *Solof* v. *Chattanooga,* 180 Tenn. 296, 299, 174 S.W.2d 471; 5 Am. Jur. 450, § 7; notes, 39 A.L.R. 773, 46 A.L.R. 157. We are aware that some courts have held otherwise, but in the cases cited by the defendant there were circumstances which either are not present in the instant case or do not affect in the same way the reasoning we have followed. "[T]he business of an auctioneer . . . has always been affected with a public interest and subject to legislative restriction." *Biddles, Inc.* v. *Enright,* 239 N.Y. 354, 365, 146 N.E. 625; *People ex rel. Schwab* v. *Grant,* 126 N.Y. 473, 475, 27 N.E. 964. Regulation of auctioneering began in this state in 1821. Statutes, 1821, p. 60.

The defendant has assigned error in certain rulings on evidence. Other than the one mentioned below, these were not pressed in brief or oral argument and therefore can be considered as abandoned. *Jacobs* v. *Ringling Bros.-Barnum & Bailey Combined Shows, Inc.,* 141 Conn. 86, 95, 103 A.2d 805; *Marchlewski* v. *Casella,* 141 Conn. 377, 378, 106 A.2d 466; Maltbie, Conn. App. Proc., § 165. The ruling which is pressed was this: In urging that the ordinance was not properly adopted, the defendant in his oral argument asserted that a transcription on discs of what took place at the public hearing before the ordinance committee and at the council meetings would show that the council was misled by an incorrect representation of the public sentiment expressed at the hearing. He claims that these discs should have been admitted as full exhibits. The

trial court found that a motion to accept a report of the ordinance committee rejecting the ordinance was defeated by a unanimous vote. Thereafter, and at the same meeting, the ordinance was passed unanimously. As has been previously stated, there is no requirement, so far as this case is concerned, that a public hearing shall be held by any committee. Furthermore, within the limitations heretofore discussed the legislative body is the judge of the need and form of legislation. *State* v. *Darazzo*, 97 Conn. 728, 732, 118 A. 81; *Carroll* v. *Schwartz*, 127 Conn. 126, 129, 14 A.2d 754.

There is no error.

In this opinion the other judges concurred.