[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
In this action the plaintiff seeks a declaratory judgment that the Hartford municipal ordinance known as the "Housing Preservation and Replacement Program," Municipal Code of Hartford, 9-75 through 9-87 (the "Ordinance") is invalid and an injunction to prevent the City of Hartford (the "City") from enforcing an agreement with the plaintiff pertaining to the Ordinance. The Ordinance requires owners who convert residential units into nonresidential uses, or who demolish residential housing, to either replace the converted or demolished housing stock with similar units or to make a contribution to Hartford's low income housing fund, the proceeds of which are used to provide replacement rental housing within Hartford.
There are no disputed facts, the parties have agreed that. their only disputes are as to issues of law, and that a summary judgment is the appropriate method of deciding this case.
The plaintiff is the owner of 142 Jefferson Street, Hartford. Prior to November, 1987 that property consisted of three residential units. In November, 1987 the plaintiff notified the Hartford Department of Housing that he intended to seek a conversion permit from the City authorizing a conversion of the property from a residential to a nonresidential use. The Department of Housing notified the plaintiff that the conversion would be subject to the Ordinance, which required the plaintiff to comply with certain enumerated terms and conditions. Pursuant to the Ordinance the plaintiff and the City entered into a Housing Replacement Agreement dated November 24, 1987 (the "Agreement"). The plaintiff also delivered to the City a letter of credit in the amount of $26,987.00. Under the terms of the Agreement within 18 months of the issuance of the certificate of compliance with the Ordinance the plaintiff was required to provide the City with residential housing in equal or greater CT Page 458 number of square feet or net residential area to the housing represented by the property being converted. If the plaintiff failed to provide the replacement housing, then the City could draw down on the letter of credit, thereby effecting the plaintiff's payment into the low income housing fund.
After entering into the Agreement the plaintiff sought and was denied relief from the requirements of the Ordinance by the City's Administrative Relief Board. The plaintiff failed to provide replacement housing within the time specified in the Agreement and, thereafter the City drew down on the letter of credit.
The plaintiff claims that the City exceeded its legislative grant of authority in enacting the Ordinance. The powers of a municipality are limited to those delegated to it by the state legislature. Capalbo. v. Planning and Zoning Board of Appeals,208 Conn. 480, 490, 547 A.2d 528 (1988); Blue Sky Bar, Inc. v. Stratford, 203 Conn. 14, 19, 523 A.2d 467 (987) A municipality can exercise only such powers as are granted it or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purpose of its creation. New Haven Water Co. v. New Haven, 152 Conn. 563, 566, 210 A.2d 467 (1965).
The City argues that the Ordinance was authorized by the broad powers given to municipalities under 7-148 of the Connecticut General Statutes, which grants municipalities the following powers, among others:
 1. To provide for the financing, construction, rehabilitation, repair, improvement or subsidization for lower and moderate income persons and families;
 2. To make rules relating to the maintenance of safe and sanitary housing;
 3. To regulate the mode of using and building when such regulations seem expedient for the purpose of promoting the safety, health, morals and general welfare of the inhabitants of the municipality; and
 4. To make and enforce police, sanitary or other similar regulations and protect or promote peace, safety, good government and welfare of the municipality and its inhabitants. CT Page 459
The Ordinance was enacted to address problems related to housing in the City which resulted from the loss of hundreds of residential units per year since 1970 due to demolitions and conversions, and a critical shortage of low income rental housing in the City.
In passing on the validity of an ordinance the court must consider the requirement that "every intendment is to be made in favor of the validity of [an] ordinance and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt." Connecticut Theatrical Corporation v. New Britain, 147 Conn. 546, 553, 163 A.2d 548
(1960); Aaron v. Conservation Commission, 183 Conn. 532, 537,441 A.2d 30 (1981); Riley v. Board of Police Commissioners, 147 Conn. 113,117, 157 A.2d 590 (1960). "[T]he court presumes validity and sustains the legislation unless it clearly violates constitutional principles. . . .If there is a reasonable ground for upholding it, courts assume that the legislative body intended to place it upon that ground and was not motivated by some improper purpose. . . . This is especially true where the apparent intent of the enactment is to serve some phase of the public welfare." State v. Gordon, 143 Conn. 698, 703,125 A.2d 477 (1956); Blue Sky Bar, Inc. v. Stratford, 203 Conn. 14, 23,523 A.2d 467 (1987).
While 7-148 does not specifically authorize the Ordinance, it does contain a broad grant of powers including the power to provide for financing and construction of low income housing, and the power to regulate the mode of using and building when such regulations are necessary for the safety, health and general welfare of the City's residents. "In the absence of an express provision, the authority necessary for effective exercise of a granted municipal power will be conferred by implication. Hartford v. American Arbitration Assn., 174 Conn. 472, 479,391 A.2d 137 (1978). Cities with charters have the power to manage, regulate and control their finances; to protect the welfare of the city; and to make all lawful regulations and orders in furtherance of any granted powers. General Statutes 7-194 (6), (26), (57)." Perretta v. New Britain, 185 Conn. 88, 440 A.2d 823
(1981).
The authority to require owners to replace residential property which is converted to non-residential use, or in lieu of such replacement, to pay a fee into a fund to provide for CT Page 460 replacement housing, can be implied from the City's power under7-148 to provide for the financing and construction of low income housing and to regulate the use of property in furtherance of the public welfare. The plaintiff has not established the invalidity of the ordinance beyond a reasonable doubt, and, therefore, this court must make "every intendment" in favor of the validity of the Ordinance.
No Connecticut court has yet ruled on the issue of the validity of a contribution in lieu of compliance with a regulation, where such contribution is not specifically authorized by statute, such as Connecticut General Statutes 8-25b
(Contributions in lieu of parking spaces). However, courts in other jurisdictions have considered the issue. In Holmdel Builders Association v. Township of Holmdel, 583 A.2d 277 (N.J. 1990) the Court considered the validity of an ordinance similar to the one at issue in this case and stated:
 [t]he phenomenon of undeterred non-residential development has exacerbated the need for lower-income housing, and has generated widespread efforts to link such needed residential development to non-residential development. p. 283-284
 The linkage trend has gained momentum during the past decade. See Symposium: Land Use, Zoning, and Linkage Requirements Affecting the Pace of Urban Growth, 20 Urban Lawyer 513 (1988); Bauman Ethier, "Development Exactions and Impact Fees: A Survey of American Practices" 50 Law Comtemp. Probs. 51 (1987). p. 284
 We find a sound basis to support a legislative judgement that there is a reasonable relationship between unrestrained nonresidential development and the need for affordable residential development. p. 288
 Inclusionary zoning through the imposition of development fees is permissible because such fees are conducive to the creation of a realistic opportunity for the development of affordable housing; development fees are the functional equivalent of mandatory set-asides; and it is fair and reasonable to impose such fee requirements on private developers when they possess, enjoy, and consume land, which constitutes the primary resource for housing. Such measures do not offend the zoning laws or the police CT Page 461 powers. p. 288.
The court in Holmdel Builders Association stated that although the enabling statute did not expressly authorize the town to impose development fees as a means to provide low income housing, it implicitly authorized such fees because it authorized the town to "provide for its fair share of low and moderate income housing by means of any technique or combination of techniques which provide a realistic opportunity for the provision of its fair share."
The plaintiff argues that the Ordinance creates an invalid tax. The criteria applied by other jurisdictions to determine whether a contribution or fee constitutes a tax are: 1) whether the fee is voluntary or mandatory; 2) whether the fee is for a governmental service which benefits the party paying the fee in a manner not shared by other members of society; and 3) whether the charges are collected to raise general revenue or to compensate the governmental entity providing the services for its expenses. Terminal Plaza Corp. v. San Francisco, 177 Cal.App.3d 892
(1986); Jenad, Inc. v. Village of Scarsdale, 18 N.Y.2d 78,218 N.E.2d 673 (1966); Emerson College v. Boston, 391 Mass. 415,462 N.E.2d 1098 (1984); San Telmo Associates v. Seattle,108 Wash.2d 20, 735 P.2d 673 (1987).
In Terminal Plaza Corp., supra, the Court considered the validity of an ordinance which provided that owners of residential hotel units must obtain permits from the City and County prior to conversion of their property to any other use. A permit was granted only if the property owner provided relocation assistance to hotel residents and made a "one-for-one replacement" for the residential hotel units being converted by one of the following methods: 1) constructing the replacement units; 2) rehabilitating an equal number of residential units; or 3) contributing an "in lieu" fee to the city's residential Hotel Preservation fund in the amount of 40 percent of the construction cost of the number of units converted. The Court held that the ordinance did not impose a tax because the fees charged did not exceed the reasonable cost of providing replacement housing and were not levied for general revenue purposes and the fees were voluntary, not compulsory, since they were exacted only if the property owner elected to convert this property to another use.
In Emerson College, supra, the Court found that an ordinance which imposed a charge for fire protection which was levied CT Page 462 against only owners of certain buildings was a tax because the charge was compulsory and the amounts collected were not targeted for the maintenance of the specialized fire equipment which was required by the types of buildings against which the charge was levied.
In this case the Ordinance is not compulsory, since a property owner is not subject to the ordinance unless he chooses to convert his property to a non-residential use. The Ordinance does not seek to increase the general revenue of the City because the fee in lieu of providing replacement housing is segregated in a discrete fund which is used only for the purpose of constructing affordable housing in the City and is directly related to the City's expenses incurred in constructing such housing. In converting his property from a residential to a non-residential use, the plaintiff has consumed the primary resource for housing in the City. Therefore, it is reasonable to impose upon him the burden of replacing that resource.
The plaintiff further claims that the Ordinance is invalid because it constitutes an impermissible exercise of the City's zoning authority. The City has the authority to establish regulations governing the use of private property pursuant to the powers granted by 7-148. Moreover, the Ordinance merely regulates existing uses, requires purely ministerial acts and does not require the making of land use decisions. see Terminal Plaza Corp. v. San Francisco, supra.
Finally, the plaintiff argues that the Ordinance effects a taking of his property without compensation. A land use regulation does not constitute a taking if it substantially advances legitimate state interests and does not prevent the owner form making economically viable use of his property. Agins v. Tiburon, 447 U.S. 255, 100 S.Ct. 2138 (1980). In Kaiser Aetna v. United States, 444 U.S. 164, 175 (1979), the United States Supreme Court state:
 [T]his Court has generally "been unable to develop any `set formula' for determining when `justice and fairness' require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons." Citations omitted. Rather, it has examined the "taking" question by engaging in essentially ad hoc, factual inquiries that have identified several factors — such as CT Page 463 the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government action — that have particular significance."
In Keystone Bituminous Coal Assn. v. DeBenedictis, 480 U.S. 470
(1987), owners of coal mines claimed that the Pennsylvania Subsidence Act effected a taking of their property without compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. The Subsidence Act limited the amount of coal they could mine on property near various types of buildings. The purpose of the Subsidence Act was to prevent structural damage caused by subsidence, the lowering of strata overlying a coal mine caused by the extraction of underground coal The Court found that the subsidence Act did not effect an unconstitutional taking because it was enacted to arrest a significant threat to the public welfare and the petitioners failed to prove that there had been any undue interference with their investment-backed expectations.
Connecticut courts have determined whether there is a taking by looking to see if the property can be utilized for any. reasonable purpose. Horak v. State, 171 Conn. 257, 368 A.2d 155
(1976). Until it appears that the property owner has been fully deprived of the reasonable and proper use of his property, there is no unconstitutional taking of property without just compensation. Luf v. Southbury, 188 Conn. 336, 351-352,449 A.2d 1001 (1982); Brecciaroli v. Commissioner of Environmental Protection, 168 Conn. 349, 358, 362 A.2d 948 (1975).
In Manor Development corp. v. Conservation Commission,180 Conn. 692, 696, 433 A.2d 999 (1980), the Court held that "merely because the total value of the property has decreased does not justify a conclusion that there has been an unconstitutional taking."
The Ordinance does substantially advance the legitimate state interest of providing for affordable housing. The plaintiff has not produced any evidence that the Ordinance deprives him of all reasonable use of his property. He has not even proved that the Ordinance has an impact on his investment backed expectations. He could have continued to use his property for residential purposes and, presumably, continues to use his property for commercial purposes. CT Page 464
For the foregoing reasons, summary judgment may enter in favor of the defendant. The Ordinance is a valid exercise of the power of the City as granted to it under 7-148 and constitutes neither a tax, nor an unconstitutional taking.
By the Court,
Aurigemma, J.