[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT (#108)
The court has before it a motion of the co-defendants Dover Investment Properties, Inc. (Dover), and Storage U.S.A. d/b/a Dover Self-Storage (Storage) for summary judgment. The defendant-Dover is the owner of a self-storage facility in Rocky Hill. The defendant-Storage is the property manager.
The lawsuit arises from a fire at the facility which caused damage to property of the plaintiffs stored thereon. The fire was allegedly caused by a third defendant, Mark Dunham. As to the defendants Dover and Storage, the plaintiffs allege negligence in permitting, and failing to supervise, certain on-premises activities conducted by Dunham which created a fire hazard and led to the fire itself. The plaintiffs further assert that the defendant-Storage, in allowing such activities, breached terms of the self-storage rental contracts which it entered into with each of the plaintiffs.
The signed "Rental Agreements" are appended to the defendants' memorandum of law in support of their motion. Critical language of each Agreement appears in paragraphs 5 and 6 as follows:
 "5. INSURANCE. Tenant, at tenant's sole expense, shall maintain on all personal property, in, on, or about the Premises, a policy of fire and extended coverage insurance, with theft, vandalism and malicious mischief endorsements, to the CT Page 3489 extent of at least 100% of the full replacement value of such personal property; provided that, to the extent Tenant does not maintain insurance as described above, Tenant shall be deemed to have "self-insured", and provided further that, in lieu of such insurance Tenant may, in Tenant's sole discretion, elect to "self-insure" totally (i.e. not insure with any duly licensed insurance company). To the extent Tenant "self-insures" as described above. Tenant shall bear the risk of loss or damage which would have been covered under the aforementioned extended coverage insurance policy. Tenant hereby ______. (TENANT'S INITIALS) elects to obtain the insurance policy described above, or ______ (TENANT'S INITIALS) elects to "self-insure". Tenant hereby releases Owner and its agents, authorized representatives and employees (hereinafter Owner's agents, authorized representatives and employees are referred to collectively as "Owner's agents") from any and all claims for damages or loss to the personal property in, on, or about the Premises, that are caused by or result from risks which are or would be insured against the extended coverage insurance policy described above and hereby waives any and all rights of recovery against Owner's agents in connection with any damage which is or would be covered by any such policy. While certain information may be available to Tenant with respect to insurance, Owner and Owner's agents are not insurers, are not affiliated with any insurance company, do not act as any insurance company's agent, broker or solicitor and do not assist in the explanation of coverage or in the making of claims under any insurance policy.
 6. LIMITATION OF OWNER'S LIABILITY, INDEMNITY. Owner and Owner's agents shall not be liable to Tenant for any damage or loss to any person, Tenant or any CT Page 3490 property stored in, on, or about the Premises or the Project, arising from any cause whatsoever, including, but not limited to, theft, fire, mysterious disappearance, rodents, acts of God or the active or passive acts, omissions or negligence of Owner or Owner's agents; except that Owner and Owner's agents, as the case may be, except as otherwise provided in paragraph 5, be liable to Tenant's for damage or loss to Tenant or Tenant's property resulting from Owner's fraud, willful injury or willful violation of law. Tenant shall indemnify and hold Owner and Owner's agents harmless from any and all damage, loss or expense arising out of or in connection with any damage to any person or property occurring in, on, or about the Premises, whether occasioned by Owner or Owner's active or passive acts, omissions or negligence or otherwise, other than damage, loss or expense in connection with Owner's or Owners' agents' fraud, willful injury or willful violation of law. Notwithstanding anything contained in this Rental Agreement, in no event shall Owner or Owner's agents be liable to Tenant in any amount in excess of $5,000 for any damage or loss to any person, Tenant or any property stored in, on, or about the Premises or the project arising from any cause whatsoever, including, but not limited to, Owner's or Owners' agents' active or passive acts, omissions or negligence. By placing his INITIALS HERE ______ Tenant acknowledges that he has read, understands and agrees to the provisions of this paragraph 6."
It is the defendants' position that the above quoted contractual language bars the plaintiffs' recovery as a matter of law.
The plaintiffs do not dispute that each signed a rental contract. Rather, they argue that because three of their number failed to indicate on a contract addendum whether it was the choice of each to purchase or not to purchase property insurance CT Page 3491 from an independent insurance provider, "the intent of the parties to the contract is unclear and ambiguous. . . . As such, what the parties intended, [they urge], cannot be determined. . . .;" Pl. Mem. of Law (3-8-94), p. 6.; and summary relief is therefore inappropriate.
"A trial court may appropriately render summary judgment when . . . there is no genuine issue of material fact remaining between the parties and . . . the moving party is entitled to judgment as a matter of law." Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11 (1983). The burden of demonstrating the non-existence of such fact rests with the moving party; D.H.R. Construction Co., v. Donnelly, 180 Conn. 430, 434 (1980); and in making a finding with reference thereto the court must examine the facts in the light most favorable to the non-movant. Mingachos v. CBS, Inc., 196 Conn. 91, 111 (1985). Having done so, "the court's function [then] is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500 (1988).
When the material issue concerns the intent of the parties based on "definitive contract language," the determination of such intent becomes a question of law. Bank of Boston Connecticut v. Schlesinger, 220 Conn. 152, 158 (1991). In making such determination "[t]he contractual terms are to be given their ordinary meaning and when the intention conveyed is clear and unambiguous, there is no room for construction." Southern New England Contracting Co., v. Norwich Roman Catholic Diocesan Corporation, 175 Conn. 197, 199 (1978). Moreover, [t]he "construction and legal effect [of a contract] cannot be changed or varied by reason of its inconvenience to the parties, or the unreasonableness of the terms." Lakitsch v. Brand, 99 Conn. 383,393 (1923). "Contracts voluntarily and fairly made should be held valid and enforced by the courts. Collins v. Sears Roebuck Co., 164 Conn. 369, 377, 321 A.2d 444 (1973). `It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties. Farmers Mechanics Savings Bank v. First Federal Savings Loan Assn., 167 Conn. 294,302, 355 A.2d 260 (1974)'" On Site Energy Corporation v. Sperry Rand Corporation, 5 Conn. App. 326, 330-31 (1985).
The issue of whether an indemnification provision in a lease contract can, pursuant to its language, operate to absolve the lessor of liability for its own negligence was considered by the Appellate Court in Burkle v. Car Truck Leasing Co., 1 Conn. App. 54
CT Page 3492 (1983), on which the defendants rely. There, suit arose from damages sustained in the operation of a vehicle leased from the defendant while in an allegedly defective condition. The lease agreement provided as follows: "[l]essee agrees to indemnify and hold [l]essor harmless from any and all liability, loss, costs, damages and expenses . . . caused by or arising from ownership, use, operation . . . of one or more automobiles leased hereunder." Id. 56. In upholding the trial court's grant of summary judgment in favor of the defendant-lessor, the court said:
 "A very similar contractual provision was construed by the Appellate Session of the Superior Court in Laudano v. General Motors Corporation, 34 Conn. Sup. 684, 688, 388 A.2d 842 (1977), to require indemnification for the indemnitee's own negligence as follows: `An intention to indemnify one against his own negligence must be expressed in clear and unequivocal language.' . . . The language of the contract provision in this case clearly, unqualifiedly, and unequivocally states that the `Seller agrees to indemnify and protect Buyer against all liabilities, claims or demands. . . growing out of the performance of this contract. . . .' (Emphasis added.) . . . The plain meaning of the words employed in the contract fairly includes a promise to indemnify even the negligent indemnitee. There is no reason why more should be required to establish the unmistakable intent of the parties. . . . `A court will not torture words to import ambiguity when the ordinary meaning leaves no room for ambiguity, and words do no[t] become ambiguous simply because lawyers or laymen contend for different meanings.' Downs v. National Casualty Co., 146 Conn. 490, 494-95, 152 A.2d 316 (1959). . . . The case of Laudano v. General Motors Corporation, supra, is on all fours with this case and is controlling." (Citations omitted). Id. 56-57.
Similarly, in a decision written by its Chief Justice the CT Page 3493 Supreme Court of Rhode Island ruled that the trial court erred in its denial of a lessor-storage company's motion for summary relief on facts analogous to those in the instant case. In its ruling the court held:
 "The parties were free to enter into a contract that limited [the lessor's] liability. The exculpatory provisions in the contract are clear and unambiguous expressions of the parties' intent that [the lessee] must accept full responsibility for any loss that occurred even if caused by the negligence of the [lessor's] employees. In the circumstances of this case we conclude that the limitations-of-liability provisions contained in the lease agreement are not violative of public policy and are enforceable as written." Rhode Island Hospital Trust National Bank v. Dudley Services Corp., 605 A.2d 1325, 1328 (R.I. 1992); see also, Whipper v. McLendon Movers, Inc., 372 S.E.2d 820 (Ga.App. 1988): "In the absence of any statutory provision against the inclusion of a contractual provision such as the one in question in a self-storage lease, we cannot refuse to enforce it on public policy grounds." P. 821.
This court finds that the language of the rental agreement (para. 6, above) is equally clear and unambiguous. Whether the plaintiffs choose to obtain insurance coverage or to assume the risk of being self-insured is not material and does not denigrate its exculpatory effect. There is no genuine issue of material fact casting doubt on an absence of liability which attaches to the defendants.
Accordingly, the defendants' motion for summary judgment is granted.
GAFFNEY, J. CT Page 3494